Commonwealth *v.* Johnson, Appellant.

Submitted November 13, 1967. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*John W. Packel and Melvin Dildine,* Assistant Defenders, and *Herman I. Pollock,* Defender, for appellant.

*Alan J. Davis,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, January 3, 1968:

On October 8, 1945, appellant, while represented by counsel, pled guilty to murder generally before a three judge court. On that same day all evidence relating to degree of guilt was presented; however, before rendering its decision or passing sentence, the court decided to take the case under advisement. Appellant next came before the court on October 19, 1945. On that day, according to a copy of the official transcript, an opinion was read from the bench by the president judge. This opinion stated that the defendant was guilty of first degree murder, but that, because the facts so closely approximated second degree murder, the penalty would be fixed at life imprisonment, the lightest sentence permissible under Pennsylvania's first degree murder statute. Act of June 24, 1939, P. L. 872, §701, as amended, 18 P.S. §4701. At the conclusion of this reading, the defendant was asked if he had anything to say before sentence was officially pronounced. When he replied that he did not, the court then read the traditional language used to sentence a man to life imprisonment. The record indicates that no other events took place at the October 19th proceeding. Appellant's sole contention in this Post Conviction Hearing Act proceeding is that he had no counsel present with him on October 19, 1945, and that this constituted denial of due process.

Before reaching the merits of appellant's case, we must first decide whether appellant effectively waived

counsel at his post-conviction evidentiary hearing.[1] When Johnson originally completed the required Post Conviction Hearing Act form, he indicated that he was without funds and desired the court to appoint counsel. It then appears that, sua sponte, he amended the form to include a space for the specific attorneys desired. In this space appellant wrote the names of three lawyers. The court, however, refused to appoint any of the named attorneys, but instead appointed a voluntary defender to represent Johnson. Appellant immediately petitioned the court to have this defender withdrawn, on the ground that the entire voluntary defender system was ineffective and inadequate, and on the further ground that he was entitled, in a capital case, to have *two* attorneys of his own choice. The court accepted the defender's voluntary withdrawal, but still refused to appoint the lawyers named in appellant's post-conviction form. As a result, Johnson appeared in court without an attorney on the day of his evidentiary hearing.

Johnson's claim that he is entitled to more than one lawyer is simply without merit. The Act of March 22, 1907, P. L. 31, §1, as amended, 19 P.S. §784 provides only that a person *"charged* with murder" and who cannot afford counsel is entitled to court appointed counsel "not *exceeding* two" to defend him. (Emphasis supplied.) Thus, not only is dual counsel not required by the statute, but even if it were, the language

---

[1] Waiver is here used not in the sense of a waiver pursuant to §4 of the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §4, 19 P.S. §1180-4 (Supp. 1966), which speaks of the waiver of the right to litigate claims which could have been adjudicated at previous stages of the litigation, but which were not. We are here involved with waiver of the right to counsel pursuant to §12 of the Post Conviction Hearing Act. See *Commonwealth v. Hoffman (No. 1),* 426 Pa. 226, 232 A. 2d 623 (1967) ; *Commonwealth v. Richardson,* 426 Pa. 419, 233 A. 2d 183 (1967) ; see also *Commonwealth v. Snyder,* 427 Pa. 83, 87 n. 1, 233 A. 2d 530, 533 n. 1 (1967).

clearly refers only to those individuals *charged* with murder. We fail to see how a man who has been in prison for twenty-two years, and who now brings a post-conviction proceeding can still be said to be "charged" with murder in the same manner as one who has not yet stood trial. Finally §12 of the Post Conviction Hearing Act, unlike the statute cited, supra, contains *no* mention of more than one lawyer, nor have any of the cases decided by this Court construing §12 required more than a single lawyer, including those involving petitioners who had originally been convicted of murder.

So also has it been firmly held that an indigent, while entitled to free counsel, is *not* entitled to free counsel of his choice. *United States v. Burkeen,* 355 F. 2d 241, 245 (6th Cir.), cert. denied sub nom., *Matlock v. United States,* 384 U.S. 957, 86 S. Ct. 1582 (1966) ("[defendant's] right to counsel does not carry with it the right to select a particular lawyer as his court-appointed attorney. [citing cases]"); *United States v. Davis,* 365 F. 2d 251 (6th Cir. 1966); cf. *Commonwealth v. Hart,* 403 Pa. 652, 662, 170 A. 2d 850, 856, cert. denied, 368 U.S. 881, 82 S. Ct. 130 (1961). It is true that in *Davis* mention was made of the right to reject court appointed counsel "for good cause shown." But this requirement, if it is to have any realistic meaning, cannot be satisfied by a broad based attack on our entire defender system, such as made by appellant in the present case.[2]

---

[2] The record below does indicate certain specific grievances leveled at one particular voluntary defender who had previously visited appellant in prison, and who, according to Johnson, was unable to remember appellant's name, or problem, even after five such visits. However, this defender is not the same individual appointed by Judge HAGAN for the present hearing. Certainly the "good cause shown" test in *Davis* does not contemplate guilt by association.

Assuming, therefore, that Johnson had no right either to double representation, or to counsel of his choice, it remains now to determine whether he *waived* a voluntary defender at his evidentiary hearing. Although we believe that Judge HAGAN would have been better advised not to have allowed the defender to withdraw until Johnson rejected his services in the presence of the hearing judge,[3] nevertheless, the extensive colloquy at that hearing between Johnson, Judge SMITH, and the assistant district attorney, convinces this Court that Johnson did waive his right to counsel.

We reach this conclusion employing the definition of waiver adopted for federal courts in *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019 (1938), and later made applicable to the states when the sixth amendment was incorporated into the fourteenth by *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963): that counsel must be "competently and intelligently waived." Although it is true that the *Gideon* right to counsel is dictated by the Due Process Clause itself, whereas the right to counsel at a Post Conviction Hearing Act proceeding exists at present only by state statute, it would appear that our *Richardson* and *Hoffman* decisions have made the right to post-conviction counsel in the first collateral proceeding just as mandatory for Pennsylvania as *Gideon* made the right to trial counsel mandatory for all the states under due process. Therefore, only the *Gideon* waiver standard seems appropriate.

Applying this standard we are convinced that counsel was here "competently and intelligently" waived. At the outset of his evidentiary hearing Johnson complained that he was appearing without counsel. To this the court replied: "You had a chance to have a

---

[3] See *United States v. Burkeen*, 355 F. 2d 241, 242-43 (6th Cir.), cert. denied sub nom., *Matlock v. United States*, 384 U.S. 957, 86 S. Ct. 1582 (1966).

Voluntary Defender represent you. This was brought before the Court; the Court heard it, and said that you would accept the services of the Voluntary Defender or else proceed without counsel." Although appellant contended that the court's statement did not represent the true content of Judge HAGAN's order, there can be no doubt that from this point on Johnson in fact must have known that he could have *only* the services of a voluntary defender appointed by the court. Yet, in spite of this knowledge, just a few seconds later, when Judge SMITH again offered Johnson the right to have a voluntary defender, appellant refused, claiming that defenders were worthless. The record of his evidentiary hearing shows clearly that appellant is an articulate, intelligent man. There can be no doubt that he knew of his right to have counsel appointed, knew also that he could not choose this lawyer himself, yet still decided to proceed in propria persona. It is of no moment that Johnson, at several points during the hearing, reiterated his request for counsel; for in each case he was given a chance to take a voluntary defender, but refused to do so.

We now turn our attention to the merits of appellant's petition. Johnson argues that on October 19, 1945, the day sentence was formally pronounced, he was unrepresented. Initially, the Commonwealth contends that this proceeding was so ministerial and formalistic that it was not such a critical stage as to require the presence of counsel. With this position we cannot agree. Although it may be true that in the present case nothing was said on appellant's behalf at the October 19th proceeding, we would be loathe to hold that nothing of aid to the client *could* have been said by counsel. Perhaps just a few words, if spoken effectively enough, might have persuaded the court to reconsider its finding of murder in the first degree, particularly since the court realized that the facts

closely approximated second degree murder, and in fact suggested that appellant might be paroled at the end of twenty years. To say that this proceeding, the very last contact appellant had with the court before his cell door slammed shut, perhaps for life, is not a critical stage of the litigation, substantially affecting Johnson's rights, is to completely ignore reality.

This Court held in *Commonwealth ex rel. Remeriez v. Maroney,* 415 Pa. 534, 204 A. 2d 450 (1964) that where a defendant was unrepresented by counsel at a proceeding at which his probation was revoked, and a sentence *already once imposed* and suspended was merely reinstated, a denial of due process resulted. We said quite clearly that "[s]uch a sentencing is a critical stage in the proceeding against the accused." Id. at 536, 204 A. 2d at 451. Certainly the sentencing in the present case was just as critical.

Recently, Mr. Justice MARSHALL writing for the Supreme Court of the United States in *Mempa v. Rhay,* 389 U.S. 128, 88 S. Ct. 254 (1967), faced a problem identical to that presented in *Remeriez. Mempa* comes very close to holding, if it does not actually so hold, that all sentencing *per se* is a critical stage requiring that the accused be given counsel. In *Mempa,* the Court noted that its previous decision in *Townsend v. Burke,* 334 U.S. 736, 68 S. Ct. 1252 (1948), holding that the absence of counsel during sentencing was a denial of due process only when coupled with other "special circumstances," was decided under the authority of *Betts v. Brady,* 316 U.S. 455, 62 S. Ct. 1252 (1942), a case which required "special circumstances" in *any* situation where an accused claimed that his lack of counsel was a denial of due process. Mr. Justice MARSHALL was quick to point out that the "special circumstances" aspect of *Betts* was overruled by *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963). He noted that although *Gideon* did not discuss aspects of

the criminal proceeding other than trial itself, nevertheless, with the "special circumstances" requirement completely stripped away, *Townsend,* which "illustrates the critical nature of sentencing in a criminal case . . . might well be considered to support by itself a holding that the right to counsel applies at sentencing." 389 U.S. at 134, 88 S. Ct. at 257. As we read *Mempa,* this statement would surely constitute the broad "per se" holding suggested above were it not for later language in the opinion demonstrating that the *particular proceeding* there involved was a "critical stage". In any event, however, we hold that the October 19, 1945 proceeding in this case constituted a critical stage for an opportunity was present for action by counsel designed to foster his client's interests and that Johnson therefore had a right to counsel at that time.

The Commonwealth next argues that, whatever the nature of the October 19th proceeding, Johnson's lawyer *was* in fact present. To support this contention, testimony of appellant's original trial counsel was taken. Although the attorney was unable to recall the events, and thus could not say whether he was present, he did introduce, without objection, a copy of the October 19, 1945 record, as prepared and certified by the official stenographer. It appears that the original record was not available. This record recites at the very top of the first page the names of those present on the 19th. The list includes Johnson's lawyer. In addition, the Commonwealth introduced a carbon copy of the court's opinion which Johnson's trial counsel claimed was handed to him in person by Judge GORDON, the presiding judge. This opinion did contain one notation that was not part of the carbon copy, but was obviously typed directly onto the page. That notation was the number "19" interposed between "October" and "1945." It is the Commonwealth's position that since this date was typed in at the time the opinion

was handed down, since Johnson's lawyer remembered that it was given to him from the bench, and since there would have been no time subsequent to October 19, 1945 when Judge GORDON would have handed such a document to the lawyer, it therefore follows that the lawyer *was* in court on the day this opinion was read. It is readily apparent, both from the remarks made by the court at the hearing, and also from Judge SMITH'S opinion, that the court chose to believe the 1945 record and disbelieve appellant's contentions that no lawyer was present and that the record was prepared ahead of time as a mere formality. We see no reason to question this finding.

One further point, however, deserves mention. During his hearing, Johnson suggested that the court might call as a witness Judge CARROLL, the only surviving member of the three judge court which convicted Johnson in 1945. The court refused to call Judge CARROLL, concluding that he could not possibly have remembered what happened. Although we cannot approve the court's refusal to subpoena a witness simply because the hearing judge has pre-determined that the witness would be of no assistance, nevertheless, we feel there were other reasons here sufficient to sustain the court's refusal to call Judge CARROLL. Judge SMITH chose to believe a clear record of the 1945 proceedings which indicate that Johnson's attorney was present. Given such a record, sworn to be accurate by the official court stenographer, any personal recollection could properly be deemed irrelevant. Furthermore, the same stenographic notes relied upon by Judge SMITH for his finding that the lawyer was present also indicate that only Judge GORDON sat at the time the opinion was delivered.[4]

---

[4] Also supporting the conclusion that Judge CARROLL was not present when sentence was pronounced is a notation on the back of the original 1945 indictment. The notation reads as follows: "Oc-

Thus, although we believe that a sentencing proceeding such as this one *is* a critical stage requiring the presence of counsel, since there was ample evidence to support the finding that Johnson's lawyer was in the courtroom on October 19, 1945, the order of the court below is affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

tober 19th, 1945. Present Hon. JAMES JAY GORDON, JR. In conformity with the above judgment, the Defendant 'James Johnson' is sentenced to the Eastern State Penitentiary at separate or solitary confinement for the period of the rest of his natural life, in the manner provided by law.

/s/ JAMES JAY GORDON, JR.
Judge"