## Commonwealth v. Newsome

*Paul W. Tressler,* Assistant District Attorney, for Commonwealth.

*Arnold Gross,* for defendant.

LOWE, J., June 20, 1972.—Defendant Vernon L. Newsome, possessor of an extended criminal record,

has been continuously committed to the State Correctional Institution at Graterford since April 25, 1963 upon a 10-to 20-year sentence arising out of a second degree murder conviction. At approximately 1:30 p.m. on June 12, 1971, Lt. Walter L. Bullman of the institution staff observed defendant standing in the doorway of the penitentiary's hospital. Secure in the knowledge defendant was in an unauthorized area, Lt. Bullman directed Guards Edward G. Pajka and Earnest M. Schwenk to search the prisoner.

As the guards approached, defendant took flight and sought escape through the penitentiary garage where he was apprehended by Guard Schwenk. During the course of the scuffle which followed, and before he was brought under full control, defendant sought to dispose of a plastic bottle which he had secreted in his left sock and which contained a number of orange-colored pills. Subsequent analysis at the State Police Crime Laboratory identified the pills as dexedrine, a dangerous drug.

On October 22, 1971, an indictment charging defendant with violating the Drug, Device and Cosmetic Act was approved by the grand jury, and the prosecution proceeded to trial before a jury and the undersigned on December 1 and 2, 1971. A guilty verdict was rendered on the latter date. The evidence must be evaluated in a light most favorable to the Commonwealth, all favorable inferences reasonably arising therefrom accepted as true, and all disputed facts resolved in its favor: Commonwealth v. Miller, 445 Pa. 282 (1971); Commonwealth v. Ewing, 439 Pa. 88 (1970). So read, the record amply sustains the charge of illegally possessing a dangerous drug.

Defendant's brief in support of his post-trial motions catalogs eight alleged trial errors. Only one will be considered hereinafter inasmuch as defendant has

waived his right to challenge the remaining seven, none of which is basic or fundamental, by reason of his failure to object or take exception in a timely fashion,[1] and his failure to file an application to suppress in accordance with Pennsylvania Rule of Criminal Procedure 323.[2] The alleged error evaluated in the paragraphs to follow concerns the asserted right of an indigent criminal defendant to discharge his lawyer, a public defender, at midtrial without justification or excuse.

At and previous to the commencement of the trial on December 1st, defendant was represented by Leo Eschbach, Esq., a public defender. Mr. Eschbach was admitted to the bar on November 20, 1967, and since that date has eminently represented hundreds of criminal defendants in adversary proceedings. Though counsel and defendant had earlier conferred extensively concerning this prosecution,[3] the defendant neglected to inform his lawyer of a desire to have certain witnesses called in his behalf until November 30, 1971, the day previous to the date the trial began and the day this prosecution was originally fixed for trial. Mr. Eschbach immediately prepared the necessary writs and presented them to the court (Hon. Robert W. Honeyman) for issuance after court hours that very

---

[1] Commonwealth v. Chasten, 443 Pa. 29 (1971); Commonwealth v. Hayward, 437 Pa. 215 (1970); Commonwealth v. Snyder, 427 Pa. 83 (1967); Commonwealth v. Raymond, 412 Pa. 194 (1963); Commonwealth v. McCray, 212 Pa. Superior Ct. 457 (1968); Commonwealth v. Haas, 198 Pa. Superior Ct. 227 (1962).

[2] Commonwealth v. Turra, 442 Pa. 192 (1971); Commonwealth v. Pinno, 433 Pa. 1 (1968); Commonwealth v. Eckhart, 430 Pa. 311 (1968); Commonwealth v. Macek, 218 Pa. Superior Ct. 124 (1971).

[3] Mr. Eschbach represented defendant at a habeas corpus hearing before this court (Hon. William W. Vogel) on August 10, 1971, and at his arraignment on October 22, 1971.

day. Judge Honeyman refused to accommodate defense counsel's obviously tardy and impossible request,[4] and referred the matter to the judge to whom the matter was assigned for trial. By reason of the failure of the defense to make timely application for the production of the requested witnesses, and the impossible burden thereby presented, the trial judge denied the writs except those concerning prisoners at Graterford.[5]

The trial began without incident. Defendant and his counsel cooperated, and there was ample, objective evidence of a spirited and determined defense. At the outset of proceedings the following morning, defendant addressed the court, "Before we start, I would like to have another attorney." After the jury was removed from the court room, defendant explained that he was not satisfied with Mr. Eschbach and that they did not "seem to see eye-to-eye on the defense." After alluding to Mr. Eschbach's great experience and his adequate representation of defendant to that point, the trial judge, in the course of denying defendant's request for the assignment of another public defender, commented, "Well, Mr. Newsome, I am not going to declare a mistrial, and I am not going to remove Mr. Eschbach. Now, if you don't want him as your lawyer, there is no way that I could or would compel Mr. Eschbach to serve as your counsel. If you want to represent your-

---

[4] Defendant sought the production of one witness from the S.C.I. at Huntingdon; two from the S.C.I. at Pittsburgh; one from the S.C.I. at Dallas; and four from the S.C.I. at Graterford.

[5] The last request was honored, and three of the four witnesses were brought to the Montgomery County Court House. Prisoner Charles L. Adderly was not produced, because he had previously been transferred to the S.C.I. at Dallas on March 8, 1971. In passing, it is to be observed *no* evidence was presented on behalf of the defense, and the witnesses subpoened were not called on defendant's behalf.

self, that's a judgment for you to make, and I will certainly permit it."

Faced with the choice of retaining Mr. Eschbach or proceeding in propria persona, defendant elected to insist upon the appointment of another public defender and evidenced an attitude of general indifference toward the prosecution. Though defendant persisted in his demands for the appointment of other counsel, he nevertheless continued to consult with Mr. Eschbach throughout the trial proceeding.[6] Previously, Mr. Eschbach had been requested by the trial judge to remain at the side of defendant throughout the remainder of the trial proceeding in the role of advisory counsel. Not once during the trial or at argument upon the post-trial motions has either defendant or Arnold L. Gross, Esq., his successor public defender, either directly or by inference or innuendo, suggested incompetency, indolence or indifference as a grounds for Mr. Eschbach's removal.

At this juncture, it is appropriate to record a few observations concerning defendant's conduct and demeanor in the court room. Vernon L. Newsome can best be described or characterized as difficult, obstructionist, loud, insolent, impolite, and belligerent. Frequently, his responses to the trial judge were deliberately unresponsive. He fingered an unlighted cigar much of the time, and on at least one occasion he was reprimanded for placing it in his mouth. His conduct

---

[6] The trial judge's bench notes indicate defendant conferred with Mr. Eschbach at great length throughout the testimony of Guard Earnest M. Schwenk, Trooper Stanley E. Wesoloski, and Chemist Joseph J. Gorski. Throughout the balance of the trial, the trial judge was very careful to make certain Mr. Eschbach adequately advised defendant of his several rights and privileges. Furthermore, the posttrial motions for a new trial and in arrest of judgment were prepared by Mr. Eschbach and filed by him with the court on defendant's behalf.

bordered on the contemptuous, and amply and abundantly evidenced a settled disposition of disdain and scorn for the judicial process.

It must be established at the outset that this controversy raises neither the question of the right of a criminal defendant to counsel nor his knowing, intelligent and voluntary waiver thereof. It does not represent a declination from the constitutional standards postulated by the Supreme Court of the United States in Gideon v. Wainwright, 372 U.S. 335 (1963), and as very recently enlarged and redefined in Argersinger v. Hamlin, 11 Crim. L. Rep. 3089 (1972). Rather, this controversy brings into focus and presents for judicial determination the alleged right of a criminal defendant to frustrate and abort the criminal process by asserting a spurious and fictitious difference with his court-appointed counsel at midtrial and thereby necessitate a mistrial and continuance.

The choice of counsel to be assigned an indigent criminal defendant lies with the court or the administrator of the public defender's office; it does not repose in the whimsy of the accused. This is not to say there could not be a fact situation in which objections to assigned counsel would not move the court to appropriate remedial measures; it is merely to emphasize defendant's burden of proving the necessity of such a measure and of doing so in a timely fashion. "Nonetheless, while this right to counsel includes the right of an indigent defendant to have counsel appointed for his benefit free of charge to him, Gideon v. Wainwright, supra, it never has been held that this right to counsel also comprehends a right of an indigent defendant to have counsel of his choice appointed for him. Rather, it is the duty of the court to appoint counsel for the indigent defendant, and unless there is good cause shown why the appointment

of a particular attorney should not have been made, defendant must accept the attorney selected by the court unless he waives the right to be represented by counsel": Davis v. Stevens, 326 F. Supp. 1182, 1183 (1971). See also United States ex rel. Fletcher v. Maroney, 280 F. Supp. 277 (1968); and Commonwealth v. James, 202 Pa. Superior Ct. 464 (1964).

Pennsylvania Rule of Criminal Procedure 318(a)(3) concerns prosecutions in which capital punishment is involved and provides, "An application for change of counsel by a defendant to whom counsel has been assigned shall not be granted except for substantial reasons." No correlative right to change counsel is mentioned in subsection (b) which concerns noncapital prosecutions. Reason and logic impel the inevitable conclusion that the burden on defendant in a noncapital prosecution would rise to a level at least as high, if not higher, as that established in 318(a)(3). Defendant has utterly and completely failed to demonstrate a *substantial reason* justifying the necessity or the desirability of removing Mr. Eschbach.

A most pertinent, appellate authority is Commonwealth v. Johnson, 428 Pa. 210 (1968). In that case, our Supreme Court reviewed the judgment of a trial judge who refused a criminal defendant's request for new counsel after a refusal to accept the services of the court-appointed public defender. Justice Roberts found that the Gideon v. Wainwright standard for a competent, intelligent and informed waiver was to be found in the following admonition: " 'You had a chance to have a Voluntary Defender represent you. This was brought before the Court; the Court heard it, and said that you would accept the services of the Voluntary Defender or else proceed without counsel.' " Concluded Justice Roberts, "There can be no doubt that he [the defendant] knew of his right to have

counsel appointed, knew also that he could not choose this lawyer himself, yet still decided to proceed in propria persona. It is of no moment that Johnson, at several points during the hearing, reiterated his request for counsel; for in each case he was given a chance to take a voluntary defender, but refused to do so." Id., 215.

Vernon L. Newsome is an experienced and knowledgeable criminal defendant. He very well knew that the gratuitous legal services to be provided him as an indigent were not to be of his choosing, and that his insistent and obdurate refusal to accept Mr. Eschbach would not profit him. His role and that of James Johnson are very nearly identical, as are the advices of the trial judge in each case. Additionally, Mr. Eschbach was at defendant's side throughout the entire trial and counseled him on a number of occasions after defendant's request for other court-appointed representation. Indeed, the principal difference lies in the fact that in the instant prosecution defendant's unreasonable and obstinate demand came at midtrial, and not at a Post Conviction Hearing Act hearing.

More recently, our Supreme Court reviewed a prosecution in which defendant was convicted of second degree murder and conspiracy to commit murder. When that case was called for trial, defendant expressed to the trial judge his dissatisfaction with his private counsel. Again the following day, defendant repeated his dissatisfaction with his lawyer and asked that new counsel be appointed. The request was denied. Later that day, defendant advised that he did not want his private counsel, and that lawyer sought permission to withdraw. This request was likewise denied. The services of another lawyer were then solicited and obtained on an appointment basis. The judgments of sentence were affirmed. The court found

it significant that there had never been an allegation of incompetency against the originally retained private counsel, nor was there a request to continue the prosecution because of the late entry of additional counsel: Commonwealth v. Owens, 447 Pa. 294 (1972).

Commonwealth v. Owens, supra, and Commonwealth v. Johnson, supra, are in accord and not at variance. The former affirmed the lower court's refusal to continue the prosecution because of defendant's dissatisfaction with his private counsel, and, in the final analysis, did not go beyond holding that "no violation of due process occurred" under the circumstances in the delayed appointment of cocounsel. The latter case, on the other hand, is more comparable to the instant prosecution and established the essential requisites for a knowing waiver in the situation where court-appointed counsel is refused after trial has begun or thereafter.

The ultimate purpose of a criminal trial is the elicitation of truth. In this quest, the trial judge assured the requisite essentials of Sixth Amendment guarantees in full measure by requiring the public defender to remain with Mr. Newsome as advisory counsel. This was precisely the course of action tacitly approved by the Supreme Court of Pennsylvania in Mayberry Appeal, 434 Pa. 478 (1969), reversed on other grounds by the Supreme Court of the United States in Mayberry v. Pennsylvania, 400 U.S. 455 (1971).

## ORDER

And now, June 21, 1972, sentencing in the above-captioned prosecution is fixed for Thursday, July 6, 1972, at 9 a.m., in Court Room "3" at the Court House, Norristown, Pa. The Sheriff of Montgomery County is ordered and directed to transfer defendant from the

State Correctional Institution at Graterford to the court room for the purpose of sentencing.