In Re: Adoption of R. I.

Argued September 26, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*S. Sanford Kantz,* with him *Levine and Kantz,* for appellants.

*Kenneth E. Fox, Jr.,* with him *Sherman K. Levine,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, December 4, 1973:
On February 24, 1972, two of appellees,[1] filed a report of intent to adopt R. I. and a petition for involuntary termination of parental rights of the natural parents in the Orphans' Court Division of the Court of Common Pleas of Lawrence County. On March 9, 1972, a hearing on the petition was held, after which the court granted the petition but allowed the natural parent who had appeared unrepresented by counsel, time to secure legal counsel to contest the proposed decree.[2] The natural parent obtained counsel and proceeded to attack the termination decree. The matter was listed for argument, and on February 8, 1973, the court below dismissed appellant's exceptions and issued a final decree terminating appellant's parental rights and permitting appellees to adopt the child. This appeal followed.

Appellant raises several allegations of error. Although her allegations that the court's findings of fact were insufficient to support a decree terminating her parental rights are without merit,[3] her allegation that

---

[1] The other appellee is the Lawrence County Child Welfare Services. R. I. was placed in its custody by order of court in May of 1967. Child Welfare placed R. I. in the home of Mr. and Mrs. C. as a foster child on April 24, 1967, where he remained until Mr. and Mrs. C. instituted these proceedings to adopt him. Custody of R. I. is not an issue in this proceeding.

[2] The natural father, although he received proper notice of the proceedings, did not appear at the hearing and has not joined in this appeal.

[3] Appellant argues that the court could not base its decision on acts of the natural parents which occurred prior to the effective date of the Adoption Act and that the court's finding that the conditions created by the natural parents "probably" would not be remedied was insufficient since the statute uses the language "can-

she was denied due process because she was without representation at the hearing in which her rights were terminated and she was not informed that she was entitled to free counsel at that hearing, if she could not afford to pay for one, is a different matter.

It has long been established that an individual is entitled to counsel at any proceeding which may lead to the deprivation of "substantial rights." *Coleman v. Alabama*, 399 U.S. 1 (1970), *In Re: Gault*, 387 U.S. 1 (1967), *United States v. Wade*, 388 U.S. 218 (1967), *Miranda v. Arizona*, 384 U.S. 436 (1966), *Com. ex rel. Rambeau v. Collins*, 455 Pa. 8, 314 A. 2d 842 (1973). *Commonwealth v. Johnson*, 428 Pa. 210, 236 A. 2d 805 (1968).

While the above-cited cases are criminal in nature, the logic behind them is equally applicable to a case involving an indigent parent faced with the loss of her child. In the words of the Court of Appeals of New York, which reached the same conclusions in the *Matter of Ella R. B.*, 285 N.E. 2d 288, 290 (1972): "A parent's concern for the liberty of the child, as well as for his care and control, involves too fundamental an interest and right [citing cases] to be relinquished to the State without the opportunity for a hearing, with assigned counsel if the parent lacks the means to retain a lawyer. To deny legal assistance under such circumstances would—as the courts of other jurisdictions have already held [citing cases]—constitute a violation of his due process rights and, in light of the express statutory provision for legal representation for those who can afford it, a denial of equal protection of the laws

not or will not be remedied." As for the first contention, see *Creighan v. Pittsburgh*, 389 Pa. 569, 132 A. 2d 867 (1957) and *Adoption of Owen*, 51 D. & C. 2d 761 (1971). As for the second contention, the record supports the decree and the court's opinion makes clear that the verb tense used in the decision was merely a question of semantics.

as well. As the Federal District Court wrote in the very similar Cleaver case [*Cleaver v. Wilcox,* decided March 22, 1972 (40 U.S.L.W. 2658)], 'whether the proceeding be labelled "civil" or "criminal," it is fundamentally unfair, and a denial of due process of law for the state to seek removal of the child from an indigent parent without according that parent the right to the assistance of court-appointed and compensated counsel. . . . Since the state is the adversary . . . there is a gross inherent imbalance of experience and expertise between the parties if the parents are not represented by counsel. The parent's interest in the liberty of the child, in his care and in his control, has long been recognized as a fundamental interest. . . . Such an interest may not be curtailed by the state without a meaningful opportunity to be heard, which in these circumstances includes the assistance of counsel.' "

By its very nature, the proceedings in the instant case are very different from those involved in *Watson Appeal,* 450 Pa. 579, 301 A. 2d 861 (1973). In *Watson Appeal,* we held that a natural mother who institutes proceedings to terminate her parental rights voluntarily cannot later complain that she should have had counsel appointed for her at the proceedings in which her parental rights were voluntarily terminated. In *Watson Appeal,* there was no adversary. The natural parent was voluntarily giving up her child and had been fully informed of the consequences of that decision.

In the instant case, on the other hand, appellees are attempting to terminate appellant's parental rights against her opposition. Consequently the appellant's adversaries have the burden of proving that they are entitled by law to terminate those rights. In such a proceeding, it would be grossly unfair to force appellant to defend against the appellees' case without the assistance of someone, trained in the law, who could test the

appellees' case by the rules of evidence and the techniques of cross-examination.

Appellees argue that appellant *had* counsel. However, the record indicates that she was not provided with counsel until the conclusion of the hearing, when the court had already entered a decree terminating her parental rights. Not until then did the court tell her that, since she did not have counsel, she should contact the attorney in charge of the Law Association's Committee on providing legal services to the indigent, and the court would give her twenty days to attack the decree terminating her parental rights. The crucial proceeding was the hearing at which evidence was presented which led the court to terminate appellant's parental rights.[4]

Once the conclusion is reached that someone in appellant's position has the right to assigned counsel to represent her at the hearing on the appellees' petition, it necessarily follows that she is entitled to be advised of that right. As the New York Court of Appeals explained in the *Matter of Ella R. B., supra,* at 290: "If the rule were otherwise, if the party before the court was not apprised of his right to assigned counsel, there could be no assurance either that he knew he had such a right or that he had waived it."

As we said in the case of *Com. ex rel. Mullins v. Maroney,* 428 Pa. 195, 236 A. 2d 781 (1968), which dealt with the question of the right to counsel in the case of a guilty plea: "If the record clearly shows that a defendant is informed of, or is cognizant of, his right to the assistance of counsel at the time of plea or trial and

---

[4] Appellant argues, *inter alia,* that most of the evidence at this hearing was hearsay which should not have been admitted. While our examination of the record leads us to the conclusion that the evidence was adopted by appellant and was, therefore, properly admissible, it is conceivable that the proceedings would have come out differently had appellant had counsel present.

expressly declines such assistance, the burden is upon him in any subsequent attack on the conviction to establish by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to constitute an effective waiver. [Citing cases.] For this rule to apply, however, the record must show in the case of an indigent defendant that he is informed of or fully understands that the court will provide him with counsel without charge if he so desires. Unless this appears in the record, the burden is upon the Commonwealth to establish that the defendant was fully aware of his right at the time the alleged waiver occurred."

Applying the same reasoning to the case at bar, since the record does not clearly show that appellant was informed of her right to free counsel before the hearing, and if the appellees wish to take the position that appellant's appearance without counsel at the parental termination hearing constituted a waiver of her right to counsel, the burden will be on the appellees to prove that the appellant was fully aware of her right to free counsel at the hearing. If the appellees cannot meet this burden, the appellant is then entitled to a new hearing on the petition to terminate her parental rights at which hearing she will be afforded legal representation.

Decree vacated and case remanded to the Court of Common Pleas, Orphans' Court Division, of Lawrence County, for further proceedings consistent with this opinion.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

While I concur in the decision of the Court, I think it appropriate to emphasize that this is the first time we have held that an indigent parent who is a respondent in a proceeding for involuntary termination of his

or her parental rights in a child is constitutionally entitled to be represented throughout by counsel.[1]

Notwithstanding that the law we now announce was not the law at the time of the hearing below, and that there was no request for counsel, the trial judge did advise the respondent (appellant here) that the hearing would be continued, if she wished, to enable her to obtain counsel. The respondent stated that by reason of her employment she could not appear at a subsequent time if the case were continued. After the hearing was concluded, however, and a decree *nisi* entered, the respondent did follow the suggestion of the court and obtained counsel through the Legal Aid Committee of the Lawrence County Bar Association. Counsel then filed numerous exceptions[2] to the decree *nisi* which were disposed of in the court's thorough opinion accompanying the final decree. While I agree that, unless knowingly waived, the right to counsel must embrace the crucial hearing stage of a proceeding, it appears that the trial court did in this case and in light of the law then prevailing evidence scrupulous fairness to the respondent.

I point out, finally, that the right to counsel claim was not presented to the court below. It is raised for

---

[1] This decision is warranted, I think, not only by analogy to the rights to counsel which have been accorded to a criminal defendant and by the rationale of *Matter of Ella R. B.*, 30 N.Y. 2d 352, 285 N.E. 2d 288 (1972) relied on by the Court, but also by such cases as *Boddie v. Connecticut*, 401 U.S. 371, 28 L. Ed. 2d 113 (1971) (filing fee required for initiating a divorce proceeding prevented access to the courts, in violation of due process), and *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551 (1972) (because of the importance of the right to custody of one's children, due process was violated when the State denied a hearing on parental fitness to an unwed father).

[2] The pleading filed was entitled "Petition to Strike Off Judgment, Stay Proceedings and Dismiss Petition for Involuntary Termination of Parental Rights", but since no final order had been entered it was treated by the court as properly filed exceptions to the decree *nisi*.

the first time on this appeal by new (appellate) counsel for appellant. This is justified only on the ground that a basic and fundamental right was involved. See *Commonwealth v. Jennings*, 442 Pa. 18, 25, 274 A. 2d 767 (1971); *White v. Moore*, 288 Pa. 411, 136 A. 218 (1927).

CONCURRING OPINION BY MR. JUSTICE NIX:

I completely adopt the majority's view that the appellant herein was entitled to the representation of counsel during these proceedings and that in absence of a record clearly evidencing a knowing and intelligent waiver the decree entered below was properly vacated. I wish, however, to reassert my opinion that *Watson Appeal*, 450 Pa. 579, 301 A. 2d 861 (1973), was incorrectly decided.

Mr. Justice MANDERINO joins in this concurring opinion.