J-S21045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DONALD GUY | |
| Appellant | No. 566 EDA 2013 |

Appeal from the Judgment of Sentence September 14, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002434-2009
CP-51-CR-0002439-2009

BEFORE:  SHOGAN, J., ALLEN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                         **FILED OCTOBER 07, 2014**

Donald Guy appeals from the judgment of sentence imposed on September 14, 2012, in the Court of Common Pleas of Philadelphia County, made final by the denial of post-sentence motions on January 22, 2013.  On the same day, a jury found Guy guilty of two counts of first-degree murder, two counts of robbery, two counts of criminal conspiracy, one count of carrying firearms on public streets in Philadelphia ("VUFA"), and one count of possession of an instrument of crime ("PIC").[1]  The court sentenced Guy to two consecutive terms of life imprisonment without parole on the homicide convictions.  On appeal, Guy raises the following four issues:  (1) whether

_____

[1]  18 Pa.C.S. §§ 2502(a), 3701(a)(1)(i), 903(a)(1), 6108, and 907(a), respectively.

the court improperly allowed preliminary hearing testimony of an unavailable witness to be introduced into evidence because he claims he was unable to conduct a full and fair cross-examination; (2) whether the court erred in admitting the unavailable witness's testimony because she is a minor and made the statement to police without the knowledge, permission, or presence of a guardian; (3) whether court erred in failing to give Guy permission to reschedule the testimony of a critical defense witness who had a family emergency; and (4) whether the court erred in denying Guy's multiple requests for new counsel.[2]   After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

The trial court set forth the facts as follows:

> On the morning of July 15, 2008, Guy went to the home of Thomas Foggy ("Foggy"),[2] and asked Foggy to assist him in robbing the Urban Wear clothing store. Urban Wear was located on West Wyoming Street in the Northeast section of Philadelphia and was owned by a husband and wife, Amissi Ndikumasabo and Bintou Soumare. At approximately 1:00 p.m., Guy and Foggy proceeded to Urban Wear; Guy carried a revolver and Foggy a semi-automatic pistol. Upon arriving at Urban Wear, Foggy distracted Bintou near a rack of jeans in the front of the store while Guy pretended to purchase t-shirts from Amissi toward the back of the store. Guy shot Amissi five times in the head at close range and then ordered Foggy to shoot Bintou, specifically saying "kill that bitch." Foggy remained still, in shock of what had just transpired, and Guy grabbed Foggy's gun and shot Bintou in the head from approximately five feet away. Guy and Foggy ran out of the store and up the street. Guy went to a dumpster behind a corner store and threw his hat, the pack of t-shirts, and the semi-automatic pistol in the dumpster.

---

[2]  The issues have been rearranged based on the nature of the claims.

Guy headed back toward the store to take the money and Foggy followed behind, but when they approached the store they saw Bintou crawling out of the store. The two men turned and ran. Guy took off his shirt and told Foggy not to tell anyone about what had happened and that if he did "the same thing that happened to them is going to happen to you." Foggy took off his shirt and the two men ran in separate directions. Guy called Vanessa Delvalle for help, specifically asking her "can you bring me a pair of sneakers because I just killed two people."

Police arrived at Urban Wear in response to a 911 call reporting gunshots and encountered a hysterical, bloodied Bintou and unresponsive Amissi. Amissi died at the scene; Bintou died later in the hospital from complications from the shooting. Police recovered the following items from the scene: a revolver wedged under the door, a camouflage hat inside the store, and a semi-automatic pistol along with a hat and t-shirts in a nearby dumpster. Guy's fingerprints were identified on the dumpster where the semi-automatic pistol, hat, and shirts were recovered and Guy's DNA matched the DNA found on a recovered hat and t-shirt. Video surveillance from a neighboring store depicted two males walking towards Urban Wear preceding the 911 call and later running away from Urban Wear around the time that the 911 call was made. In the video, one of the males wore a camouflage hat while walking towards the store and did not wear the hat while running away. Vanessa Delvalle gave a statement to police and also identified Guy from a still shot photograph from a surveillance video. After a lengthy search, police found Guy at a relative's home, hiding under a bed, and arrested him.

Trial Court Opinion, 8/21/2013, at 4-6 (some footnotes omitted). Guy was indicted on two bills of information, Docket Nos. CP-51-CR-0002434-2009 ("Docket No. 2434-2009") and CP-51-CR-0002439-2009 ("Docket No. 2439-2009"). For each bill, he was charged with first-degree murder, robbery,

criminal conspiracy, firearms not to be carried without a license, VUFA, and PIC.

On August 30, 2012, the Commonwealth presented a motion *in limine* to admit Delvalle's testimony from the February 25, 2009, preliminary hearing because the Commonwealth argued that Delvalle was unavailable pursuant to Pa.R.E. 804. The trial court granted the motion on September 5, 2012. That same day, the court also denied Guy's multiple requests for new counsel.

Guy's jury trial began on September 10, 2012. On September 14, 2012, the jury found Guy guilty of two counts of first-degree murder, two counts of robbery, two counts of criminal conspiracy, one count of VUFA, and one count of PIC.[3] That same day, the court sentenced Guy to two consecutive terms of mandatory life imprisonment, without the possibility of parole, on the murder convictions.[4] On September 20, 2012, Guy filed a

_____

[3] The remaining charges were *nolle prossed*.

[4] At Docket No. 2434-2009, the court imposed two terms of ten to 20 years' incarceration for the robbery and conspiracy offenses, as well as two terms of two-and-one-half to five years' imprisonment for the VUFA and PIC crimes, all to be served concurrently to the murder charge and consecutively to one another. At Docket No. 2439-2009, the court imposed a term of ten to 20 years' incarceration for the robbery offense, to be served concurrently to the murder crime on the same docket and consecutively to the PIC offense at Docket No. 2434-2009. The court imposed no further penalty with respect to the conspiracy conviction.

post-sentence motion, raising sufficiency and weight claims, which was denied by operation of law on January 22, 2013. This appeal followed.[5]

In Guy's first argument, he claims the court improperly allowed preliminary hearing testimony of an unavailable witness, Delvalle, to be introduced into evidence. Guy's Brief at 8. Guy bases his claim upon both the United States and Pennsylvania constitutional right of the accused to confrontation. *See* U.S. Const. Amend. VI; Pa. Const. Art. I, § 9. He concisely asserts, "Detectives knew Ms. Delvalle was in Puerto Rico, but their efforts to locate her were insufficient and lacked due diligence." *Id.* at 10.[6] Guy concludes the court abused its discretion by allowing the preliminary hearing notes of testimony to be read into evidence.

---

[5] On March 13, 2013, the trial court ordered Guy to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 19, 2013, the trial court received his counseled concise statement; however, on May 9, 2013, appellate counsel petitioned to withdraw from representation. On May 10, 2013, the court granted the petition and subsequently appointed new counsel. Guy was served a second order directing him to file a concise statement. New appointed counsel requested an extension of time to file a response, which was granted. On June 19, 2013, Guy filed a concise statement. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 21, 2013.

[6] Guy also states Delvalle "willfully and intentionally lied to the court regarding honoring subpoenas to appear in court. If Delvalle was not honest to the court, then her statement and her testimony at the second preliminary hearing is suspect, and should have been excluded." *Id.* at 11. However, other than a bald assertion, he presents no case law to support the contention that a witness's failure to adhere to a subpoena shall cause her testimony to be excluded. Therefore, we need address this argument further.

The admissibility of evidence is a matter addressed to the discretion of the trial court and may be reversed only upon a showing that the court abused its discretion. **Commonwealth v. Hanford**, 937 A.2d 1094, 1098 (Pa. Super. 2007), *appeal denied*, 956 A.2d 432 (Pa. 2008).

In this case, the trial court determined that Delvalle was an unavailable witness because she moved to Puerto Rico and could not be further contacted. With respect to an unavailable witness, this Court has previously stated:

> Under both our federal and state constitutions, a criminal defendant has the right to confront and cross-examine witnesses against him at trial. However, it is well-established that an unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the criminal defendant had counsel and *a full opportunity to cross-examine that witness at the prior proceeding*. The exception to the hearsay rule that permits the admissions of an unavailable witness' prior testimony at a preliminary hearing is "predicated on the 'indicia of reliability' normally afforded by adequate cross-examination. But where that 'indicia of reliability' is lacking, the exception is no longer applicable." The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial. However, where the defense, at the time of the preliminary hearing, was denied access to vital impeachment evidence, a full and fair opportunity to cross-examine the unavailable witness may be deemed to have been lacking at the preliminary hearing. The opportunity to impeach a witness is particularly important where the Commonwealth[']s entire case hinges upon the testimony of the unavailable witness.

***Commonwealth v. Johnson***, 758 A.2d 166, 169 (Pa. Super. 2000)

(citations omitted, emphasis in original). ***See also*** Pa.R.E. 804.[7]

> Moreover, we note:
>
> A witness who cannot be found at the time of trial will be deemed unavailable "only if a good-faith effort to locate the witness and compel his attendance at trial has failed." "The burden of demonstrating such a 'good-faith effort' is on the party seeking to introduce the prior testimony, and 'the question of the sufficiency of the preliminary proof as to the absence of a witness is largely within the discretion of the trial judge.'" The extent to which the Commonwealth must go in order to produce an absent witness "is a question of reasonableness."

***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 541 (Pa. Super. 1995)

(citations omitted).

The trial court addressed the issue of Delvalle's unavailability as follows:

> In the instant matter, Guy asserts that this court erred in finding [Delvalle] to be unavailable for trial and improperly

_____

[7] Rule 804 provides, in pertinent part:

> **(b) Hearsay Exceptions.** The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an adequate opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Pa.R.E. 804(b)(1).

admitted her testimony from the preliminary hearing at trial. This court disagrees. A month and a half before trial, ADA Davis asked Detective Buckley to try to locate Delvalle. Detective Buckley's initial research showed that Delvalle had no criminal history and the only address that came up was the one that she had provided in her statement to police. The detective went to that address and spoke with Delvalle's cousin who had not seen Delvalle in months and had no idea where she was living, but was able to give the detective the address of Delvalle's mother and the phone number of her grandmother. Detective Cruz spoke with Delvalle's grandmother who had not seen Delvalle in months and had no idea where she was living. Detective Buckley made multiple visits to Delvalle's mother's house and was told that Delvalle had gone to Puerto Rico with her boyfriend. Delvalle's mother had no idea where she was staying, when she was coming back, and had no way of contacting her. Detective Buckley left Delvalle's subpoena with her mother, along with his contact information and the contact information of the district attorney. Detective Bass[, Detective Buckley's partner,] made a final visit to Delvalle's mother's house the morning of the trial and she reiterated that she had not seen or heard from Delvalle since she went to Puerto Rico in July. Additionally, Detective Buckley checked Delvalle's name with area hospitals as well as the Medical Examiner's Office and the results were negative. This court found these measures to be a reasonable, good faith effort by the Commonwealth to locate Delvalle and thus, determined that Delvalle was unavailable.

Having found Delvalle to be unavailable, this court next assessed whether Guy had had a full and fair opportunity to cross-examine Delvalle at the preliminary hearing. Guy had the opportunity to inquire as to the circumstances surrounding Delvalle's statement to police – when and how she was brought to police headquarters, how long she was at headquarters, and what she was told by the officers – as well as the circumstances surrounding the phone calls received from Guy after the murders. Based upon the testimony from the preliminary hearing, this court found that Guy was represented by counsel and had a full and fair opportunity to test Delvalle's credibility as a witness; th[u]s, this court permitted Delvalle's preliminary hearing testimony to be read at trial.[11]

[11] The testimony read at trial reflects various redactions to the original transcript of the preliminary hearing, as the

> Commonwealth redacted all portions of the transcript requested by the defense.

Trial Court Opinion, 8/21/2013, at 7-8.

We agree with the trial court's findings. Contrary to Guy's assertion, the record indicates that extensive efforts were undertaken to locate Delvalle for trial and the Commonwealth exercised a good faith effort to ascertain her whereabouts. **See** N.T., 9/4/2012, at 57-70. Under similar circumstances, this Court has previously held that an investigating officer's attempts to locate witness at all known addresses, and through all known, available contacts, met the "reasonableness" standard. **See also Commonwealth v. Douglas**, 737 A.2d 1188 (Pa. 1999) (concluded the trial court did not abuse its discretion in finding that the Commonwealth made a good faith effort to locate the unavailable witness where police officers repeatedly searched at his apartment, at his mother's apartment, at a number of bars he was known to frequent, at his girlfriend's house, and also contacted the witness's family members, girlfriend, neighbors, the security officers at the housing project where he lived to try to find the witness); **Commonwealth v. Cruz-Centeno**, 668 A.2d 536, 542 (Pa. Super. 1995) (determined there was sufficient evidence to support the trial court's finding that a good faith attempt to find the witness had been made by the Commonwealth where efforts included going to his last known address, interviewing friends and relatives, searching postal, prison, voting and motor vehicle records, and searching areas he was known to frequent).

Moreover, although not argued by Guy, a cursory review of the record illustrates that defense counsel did in fact conduct an extensive cross-examination of Delvalle at the time of the preliminary hearing. *See* N.T., 2/25/2009, at 37-49, 52. As such, we find no abuse of discretion in the court's determination that the Commonwealth made a good faith effort to secure Delvalle's presence at trial. Therefore, his first argument fails.

In his second argument, Guy contends the trial court erred in admitting Delvalle's statement to police because she was a minor and made the statement to police without the knowledge, permission, or presence of a guardian. Guy's Brief at 13. He claims the police threatened Delvalle, which caused her to lie to the court and skip trial to go to Puerto Rico. Moreover, he claims the questioning of Delvalle "tainted her statement as she would have said anything to keep herself out of trouble." *Id.* at 14. Guy concludes that the use of the coerced statement caused him undue prejudice and tainted "the entire trial as fruit from a poisonous tree." *Id.*

A review of the record reveals that Delvalle's statement itself was not admitted at trial; rather, it was her preliminary hearing testimony. *See* N.T., 9/5/2012, at 103 ("The Court: The statement itself does not come in. It's the preliminary hearing that comes in. [Defense counsel]: Sure."). Moreover, as the trial court properly noted:

> In Pennsylvania, the general rule of standing is that only the person whose rights have been violated has standing to attack the validity of the action resulting in the violation.[12] Applying this concept to the instant matter necessarily makes

- 10 -

moot Guy's challenge to the statement taken from Vanessa Delvalle. Guy did not have proper standing to raise the issue at trial, and thus his claim on appeal lacks merit.

> [12] *Com v. Russell*, 310 A.2d 296, 298 (Pa. Super. 1973) [(defendant did not have standing to contest the grant of immunity to a witness who later testifies against him)].

Trial Court Opinion, 8/21/2013, at 8 (footnote omitted). Accordingly, Guy's second issue is unavailing.

In Guy's third argument, he claims the trial court erred in failing to grant a continuance to reschedule the testimony of a "critical" defense witness. Guy's Brief at 11. Specifically, Guy states that Rasheed Clover was prepared to testify as an alibi witness but left before testifying due to a family emergency. *Id.* at 12. He asserts the court abused its discretion by not allowing "the defense case to proceed for one more day in order to allow Mr. [C]lover's testimony to be rescheduled." *Id.*

> "The grant or refusal of a request for a continuance is a matter vested in the sound discretion of the trial court, and its decision, to grant or deny the request, will not be reversed by an appellate court in the absence of an abuse of that authority." The factors to be considered to determine whether the trial court's discretion was properly exercised are: (1) the necessity of the witness to strengthen the defendant's case; (2) the essentiality of the witness to defendant's defense; (3) the diligence exercised to procure his presence at trial; (4) the facts to which he would testify; and (5) the likelihood that he could be produced at the next term of court.

*Commonwealth v. Robinson*, 864 A.2d 460, 509 (Pa. 2004) (citations omitted). "The refusal to grant a continuance constitutes reversible error only if prejudice or a palpable and manifest abuse of discretion is

- 11 -

demonstrated." ***Commonwealth v. Roser***, 914 A.2d 447, 456 (Pa. Super. 2006) (citation omitted).

Here, the record reveals the following: Clover did not contact defense counsel until just prior to the start of trial with an alibi for both Guy and his co-conspirator, Foggy. ***See*** N.T., 9/13/2012, at 106. Clover would have testified that both men were across the street from where the shooting took place but they were not in the store. ***Id.*** at 109. On the last day of trial, when Clover was scheduled to testify, he apparently was at the courthouse but left before taking the stand. ***Id.*** at 104. The court provided defense counsel with several recesses to ascertain Clover's whereabouts. ***Id.*** at 61-120 (providing the entire scope of discussion related to Clover). The court also allowed defendant's grandmother to call Clover to see if he could still attend the trial that afternoon. ***Id.*** at 111. Another recess was taken. ***Id.*** at 112. During this time, defense counsel spoke with Clover, who stated that he received an emergency call regarding his child, who he then had to take to "a hospital somewhere in West Philadelphia. He was unable to give [counsel] the name of the hospital. He was unable to give [counsel] the address of the hospital or what streets he was at when he parked and ran into the hospital." ***Id.*** at 113. The court denied counsel's request for continuance, stating:

> It seems to me that it's not a legitimate excuse. I don't understand how you don't know what hospital you're at or you don't know where the street is.

…

> So it sounds to me like you have a witness who's really not willing to come in and perhaps say [that Guy and Foggy were across the street] on the stand.

…

> [I]f I had a level of confidence that this person was actually going to be available or wasn't just trying to absent themselves from presenting testimony, then I don't know. I'm just not convinced that he's ever coming into court. I know that the Commonwealth is willing to not make the objection to alibi, but we do have rules about alibi witnesses so this very thing doesn't happen, that at the very last minute we've let, you know, we were ready to close. We've taken a lot of time and he's aware that if he doesn't make himself available now that the case will go on without him, and it doesn't seem that he's willing to make any particular efforts to get himself here. And so to me, that does not sound like somebody that I have any faith will get himself here tomorrow.

*Id.* at 115-116, 119.

In its Rule 1925(a) opinion, the trial court further explained:

> In the instant case, Guy asserts that this court erred in denying his request for a continuance to allow Mr. Clover, an alleged fact/alibi witness to testify at trial. This argument is without merit because this court gave counsel adequate opportunities at trial to present Mr. Clover. The record shows that this court took numerous recesses to allow counsel to try to communicate with Mr. Clover both before and after the brief period he was present in the courthouse. This court also permitted Guy's family to contact Mr. Clover from the court to confirm whether a lengthier recess might allow Mr. Clover to present himself for trial. Although Mr. Clover told counsel over the phone that he needed to leave and could not return because of a family emergency at a hospital, he was unable to tell counsel the name of the hospital or even the name of the street where he had parked near the hospital. Additionally, this court conducted a colloquy with Guy about witnesses to be called at trial, to which Guy responded "Everything is fine." Following this colloquy, the court gave counsel an opportunity to speak with

- 13 -

Guy's family and took a recess for counsel to investigate the whereabouts of Mr. Clover and to discuss Mr. Clover's purported testimony and the possibility that the witness was not actually willing to testify about Guy's alleged alibi. Indeed, this court told counsel to discuss the alibi issue with Guy stating "you can have as much time as you need." Had this court found that Mr. Clover had actual alibi testimony, or was in any way actually prepared to testify, a lengthier continuance of proceedings would have been granted. In consideration of all of these circumstances, this court found that Mr. Clover's purported testimony would have done little to strengthen Guy's case and the likelihood that Mr. Clover would actually appear in court to testify, given his vague emergency excuse, was nil; thus, this court properly denied Guy's request for a continuance.

Trial Court Opinion, 8/21/2013, at 9-10 (footnotes omitted).

We agree with the trial court's conclusion as to lack of diligence exercised to procure Clover's presence at trial and the likelihood that he could be produced at the next term of court. *See Robinson*, 864 A.2d at 509. Moreover, Guy fails to establish how the absence of Clover's testimony during trial caused him prejudice or denied him a fair trial. As noted by the trial court, Clover's purported testimony would have done little to strengthen Guy's case, especially because Clover still placed Guy across the street from the scene of the crime. Likewise, there is a lack of credibility to Clover's statement because he also mentioned that the co-conspirator, Foggy, never went into the store but Foggy pled guilty to committing the crimes and is serving a lengthy sentence for his involvement. There was also DNA, fingerprints, and ballistic evidence all placing Guy and Foggy in the store at the relevant time of the crime. Furthermore, we observe that the trial court repeatedly gave time to the defense to find Clover and his explanation for

his absence lacked credibility and trustworthiness. Accordingly, we conclude the trial court's refusal to grant a continuance did not constitute an abuse of discretion, and Guy's third claim fails.

In his final argument, Guy contends the court erred in repeatedly denying his multiple requests for new trial counsel throughout the proceedings. Guy's Brief at 12. He briefly states: "[T]here were substantial irreconcilable differences between [himself] and trial counsel over his entire defense. [Guy] repeatedly requested the court to appoint new counsel for good reason." *Id.* at 13.

Preliminary, we note Guy does not expound upon his "good reason" for requesting the appointment of new counsel. Therefore, his argument is lacking development and amounts to a bald assertion. Moreover, in addressing Guy's claim, we are guided by the following:

> The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense. Similarly, Article I, Section 9 of the Constitution of this Commonwealth affords to a person accused of a criminal offense the right to counsel. However, the constitutional right to counsel of one's own choice is not absolute. Rather, the right of an accused individual to choose his or her own counsel, as well as a lawyer's right to choose his or her clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice.
> *Commonwealth v. Lucarelli*, 601 Pa. 185, 193-94, 971 A.2d 1173, 1178-79 (2009) (citations omitted).

Our Supreme Court also noted:

> The situation is different for a defendant who is not employing counsel at his own expense, and who, at public expense, seeks court-appointed counsel. Such a defendant does not have a right to choose the particular counsel to represent him. ***Commonwealth v. Moore***, 534 Pa. 527, 539, 633 A.2d 1119, 1125 (1993) (citing ***Commonwealth v. Johnson***, 428 Pa. 210, 213, 236 A.2d 805, 807 (1968)), *cert. denied*, 513 U.S. 1114, 115 S. Ct. 908, 130 L. Ed. 2d 790 (1995). Nor, after counsel has been appointed, can he change to other assigned counsel unless a substantial reason exists for the change. Pa.R.Crim.P. 316(c)(ii) (delineating "Assignment of Counsel") [Now Pa.R.Crim.P. 122]; ***Moore***, 534 Pa. at 539, 633 A.2d at 1125; ***Commonwealth v. Williams***, 514 Pa. 62, 67-68, 522 A.2d 1058, 1061 (1987).

> ***Commonwealth v. Rucker***, 563 Pa. 347, 350, 761 A.2d 541, 542 n.1 (2000).

***Commonwealth v. Kelly***, 5 A.3d 370, 377-378 (Pa. Super. 2010).

Moreover, we note:

> The Constitution does not force an unwanted attorney upon a defendant.

> If the defendant does not agree with his counsel, he has a right to present his own contentions; but the sovereign is under no duty to search for counsel until it finds one who will agree with him.

> …

> The case here is not unlike that of [***United States ex rel. Davis v. McMann***, 386 F.2d 611 (2nd Cir.1967)], wherein that Court, quoting at length from the record, held:

>> We have recognized a right of a defendant to proceed without counsel and to refuse the representation of assigned counsel…. He may not use this right to play a "cat and mouse" game with the court…or by ruse or stratagem

- 16 -

> fraudulently seek to have the trial judge placed in a
> position where, in moving along the business of the court,
> the judge appears to be arbitrarily depriving the defendant
> of counsel.…

*Id.* at 381 (some internal citations omitted).

Here, Jay S. Gottlieb, Esquire, was court-appointed to represent Guy and entered his appearance on September 23, 2010. Gottlieb remained his counsel throughout trial and post-trial proceedings. The trial court found the following:

> In the present case, Guy repeatedly requested new counsel, however, his requests failed to show the requisite "substantial reasons" or "irreconcilable differences." Guy's requests included the following assertions, which represent the crux of his desire to have new counsel appointed for trial: 1) "Me and my attorney, we are not clicking. We're not on the same page right now."; 2) "[I]f we ain't going to be on the same page, I don't want him fighting for me if he ain't going to do nothing that's going to benefit me."; 3) "He only visited me one time. We never talked about no strategy."; 4) "Your Honor, I've tried to talk to him. It's not working. I can't go to trial with this guy, Your Honor."; and 5) "Your Honor, he only came to see me one time out of all that time and he ain't tell me nothing, Your Honor. We had the visit. The visit was only for like twenty minutes, Your Honor. […] It was only for twenty minutes. He left. He never told me. He never came back no time after that, no strategy to tell me anything about how we gonna fight this case, how we gonna. We don't even see eye to eye, Your Honor." This court continually asked Guy to advise the court of the things he wished for counsel to do on his behalf throughout the pre-trial proceedings on September 4, 5, and 10, 2012 and this court never received a meritorious response; the responses centered around Guy's dissatisfaction with the trial strategy and the time he had spent with counsel. Having found no "substantial reasons" or "irreconcilable differences" to warrant the appointment of new counsel, this court properly denied Guy's numerous requests for new trial counsel.

Trial Court Opinion, 8/21/2013, at 11-12 (footnotes omitted).

In light of Guy's lacking argument and based on the trial court's proper analysis, we discern no abuse of discretion on the court's part in denying his repeated requests for new court-appointed counsel. Accordingly, his final argument also fails, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014