J-S57016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: K.K.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: E.M., MOTHER | No. 700 EDA 2015 |

Appeal from the Order February 12, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000592-2014

_____

| IN THE INTEREST OF: K.K.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: E.M., MOTHER | No. 701 EDA 2015 |

Appeal from the Order February 12, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000593-2014

_____

| IN THE INTEREST OF: S.M.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: E.M., MOTHER | No. 702 EDA 2015 |

J-S57016-15

Appeal from the Order February 12, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000594-2014

_____

IN THE INTEREST OF: K.K.T., A MINOR

APPEAL OF: E.M., MOTHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 703 EDA 2015

Appeal from the Order February 12, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000595-2014

BEFORE:  MUNDY, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 17, 2015**

E.M. (Mother) appeals from the decrees entered on February 12, 2015, in the Court of Common Pleas of Philadelphia County that terminated her parental rights to her four children following a voluntary relinquishment proceeding. Concomitantly, counsel for Mother has filed a petition for leave to withdraw as counsel and an **Anders**[1] brief. The two issues identified in the **Anders** brief are (1) whether counsel was ineffective, and (2) whether the court erred in failing to consider whether a natural bond exists between child and parent, and whether termination would destroy an existing,

_____

[1] **Anders v. California**, 386 U.S. 738 (1967).

- 2 -

necessary and beneficial relationship. Based upon the following, we affirm and grant the petition for leave to withdraw.[2]

The trial court has aptly summarized the facts of this case as follows:[3]

The dates of birth of the children are: K.T. on [], 2007, K.T. on [], 2008, S.T. on [], 2012 and K.T. on [] 2006.

On November 15, 2012, DHS [Philadelphia Department of Human Services] received a Child Protective Services (CPS) [report] alleging that K.T.'s (d.o.b. []-08) hands and feet were

---

[2] In light of the Supreme Court's admonishment of this Court in regard to delays in Fast Track cases, **see In re T.S.M.**, 71 A.3d 251, 261 n.21 (Pa. 2013) (stating that "repeated delays" were not fully explained), we note that the above-listed, consolidated cases were delayed for panel listing because the Philadelphia County Court of Common Pleas sent the certified record to this Court well past the due date.

The certified records in the above-captioned cases were originally due April 13, 2015. Appointed counsel had filed *praecipes* to discontinue the appeals at 694, 696, 697, and 698 EDA 2015, which were counseled appeals that were apparently duplicative of the above-captioned, *pro se* appeals. By Order dated March 31, 2015, this Court remanded to the trial court for a period of thirty days to determine whether appointed counsel should be permitted to withdraw and if appointment of new counsel was necessary. On April 27, 2015, the trial court indicated it had permitted original counsel to withdraw, and had appointed new counsel to represent Mother. Thereafter, in May and June, despite inquiries from this Court to the trial court concerning return of the record, this Court did not receive the certified record until June 12, 2015.

As a result, the briefing schedule for these cases was delayed by nearly two months, due solely to the overdue records. Furthermore, in filing the **Anders** brief, appointed counsel initially failed to provide this Court with a requisite copy of the letter sent to Mother explaining her rights, which further delayed the listing of the appeals.

[3] The birth dates of the minor children have been redacted except as to year to protect the privacy of the children.

bound with duct tape, his hands were taped behind his back, and a rope was tied around his waist and attached to a shelf in the bathroom closet of the family's home. A photograph had been taken of the scene. Maternal grandmother had removed the child from the situation. The report was indicated.

On November 15, 2012, DHS visited the home. Mother and maternal grandmother stated that they were unaware who had bound the child. The child stated that he was bound and placed in the closet by the Mother.

On November 15, 2012, DHS obtained an [O]rder of Protective Custody (OPC) for the children and placed them in foster care. Two of the children were placed in the home where they are still residing and the other two were placed in the same home on December 4, 2012.

A shelter care hearing was held on November 16, 2012 before Master Carol A. Carson. Master Carson lifted the OPC and ordered that the children be temporarily committed to DHS.

On November 29, 2012, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated the children dependent and committed them to DHS.

On February 28, 2013, Judge Irvine found clear and convincing evidence had been presented to establish aggravated circumstances existed as to E.M. regarding K.T. (d.o.b. []-08). On May 16, 2013, Judge Irvine found aggravated circumstances as to E.M. in the cases of the three other children.

The matter was then listed on a regular basis before judges of the Philadelphia Court of Common Pleas - Family Court Division - Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351, and evaluated for the purpose of determining or reviewing the permanency plan of the child.

In subsequent hearings, the DRO's [Dependency Review Orders] reflect the Court's review and disposition as a result of evidence presented, addressing, and primarily with, the goal of finalizing the permanency plan.

On November 20, 2014[,] E.M.[,] mother, executed voluntary relinquishment petitions [and consents to adoption with respect to her four children].

On December 17, 2014[,] E.M. sent a letter to DHS revoking the voluntary relinquishment petitions.

Subsequently, at a hearing on February 12, 2015, the mother, E.M., changed her mind and withdrew her letter of revocation regarding the voluntary relinquishment petitions. The mother requested that the Court proceed on her voluntary relinquishment petitions. Therefore, the Trial Court issued a decree of voluntary termination of parental rights of E.M. and transferred custody of the children to DHS in accordance with the mother's request.

Trial Court Opinion, 6/9/2015, at 1–2.[4]   Following the entry of the trial

court's voluntary termination decrees, Mother appealed.[5, 6]

_____

[4] For the sake of completeness, we note the court also involuntarily terminated the parental rights of the father of K.T., K.T., and K.T., and confirmed the consent to adoption of the father of S.M.T.

[5] On March 12, 2015, along with the notice of appeal, Mother's counsel filed a Pa.R.A.P. 1925(b) statement, stating "[t]he only issue that could possibly be raised is whether [Mother's] consent was legally obtained prior to the termination of her parental rights on February 12, 2015."   Mother's Statement of Matters Complained of on Appeal Pursuant to [Pa.]R.A.P. 1925(b), 3/12/2015, at ¶2.

We note that on April 21, 2015, the trial court permitted Mother's counsel to withdraw, and appointed new counsel to represent Mother on appeal.

[6] On March 10, 2015, Mother herself filed a *pro se* notice of appeal and Rule 1925(b) statement, claiming that "I was told if I sign over my rights the children were going to stay with grandmother," that "I have a learning disability and was lied to by the DHS worker and appointed counsel," and that appointed counsel "never helped me understand the petitionS I signed." Mother's Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), *pro se,* 3/10/2015.   However, since Mother was represented by
*(Footnote Continued Next Page)*

Our standard of review is as follows:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In re A.J.B.*, 797 A.2d 264, 266 (Pa. Super. 2002). Our Supreme Court has explained that "[a] party seeking to disturb a termination decree must show that the consent given to terminate parental rights was not intelligent, voluntary and deliberate." *In re M.L.O.*, 416 A.2d 88, 90 (Pa. 1980)(citations omitted).

Prior to addressing the issues identified in this appeal, we must review counsel's petition to withdraw. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) ("Initially, we note that we may not address the merits of the issue raised on appeal without first reviewing the request to withdraw.").

In *In re V.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992), this Court extended the ability of counsel to withdraw when counsel believed an appeal to be frivolous to appeals involving the termination of parental rights. We stated that counsel appointed to represent an indigent parent on an appeal

*(Footnote Continued)* ―――――――――――

counsel, her *pro se* filings were legal nullities. *See Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137, 1139 (1993) ("*Ellis II*") (holding there is no right to hybrid representation either at trial or on appeal).

- 6 -

from a decree terminating parental rights may, after a conscientious and thorough review of the record, petition this Court for leave to withdraw as counsel and must submit an **Anders** brief. **Id.** at 1275. In this regard, this Court has explained:

> In order to comply with **Anders** and its Pennsylvania progeny, counsel must:
>
>> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous;
>>
>> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no merit" letter or *amicus curiae* brief; and
>>
>> (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se* or raise any additional points that he deems worthy of the court's attention.

*In re S.M.T.*, 856 A.2d 1235, 1237 (Pa. Super. 2004).

Further, in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), the Pennsylvania Supreme Court addressed the second requirement of **Anders** — the contents of the **Anders** brief — and held that the brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling

case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.[7]

Our review confirms counsel has complied with the requirements of *Anders* and *Santiago*. We also require counsel to send a letter advising the appellant of his or her rights, and counsel has satisfied this Court that he has done so. *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).[8, 9] Therefore, we proceed "to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Commonwealth v. Flowers*, 113 A.3d 1246, 1248 (Pa. Super. 2015) (citation omitted). In so doing, we review not only the issues identified by appointed counsel in the *Anders* brief, but examine all of the proceedings to "make certain that appointed counsel

---

[7] Counsel concludes that, "[w]ith such a limited standard of review, following an interview with Mother and thorough review of the record and trial court's opinion, it is wholly without merit to argue that [sic] the first issue that trial counsel was ineffective." *Anders* Brief at 21–22. Counsel further states "[b]ecause the [Pa.R.A.P. 1925(b)] statement of errors does not include the second issue, it is waived." *Id.* at 22.

[8] A *per curiam* Order was filed on July 10, 2015, directing counsel to provide the Prothonotary of this Court with a copy of the letter he sent to Mother informing her of her right to retain counsel or proceed *pro se* in these appeals. A copy of counsel's letter to Mother was received by this Court on July 27, 2015.

[9] Mother has not filed a response to counsel's *Anders* brief and petition to withdraw.

- 8 -

has not overlooked the existence of potentially non-frivolous issues." **Id.** at 1249.

The first issue discussed in the **Anders** brief by whether trial counsel was ineffective, specifically, in failing to help Mother understand the voluntary relinquishment petitions. **See Anders** Brief at 16–17.

This Court has explained an indigent person's right to counsel in a termination hearing as follows:

> The unique nature of parental termination cases has long been recognized by the Supreme Court of Pennsylvania. Thus, **In re Adoption of R.I.**, 455 Pa. 29, 312 A.2d 601 (Pa. 1973), the Supreme Court held that an indigent parent in a termination of parental rights case has a constitutional right to counsel. The right to counsel in parental termination cases is the right to effective assistance of counsel even though the case is civil in nature. **In re Adoption of T.M.F.**, 392 Pa. Super. 598, 573 A.2d 1035 (Pa. Super. 1990) (*en banc*); **see also, In the Interest of S.W.**, 2001 Pa. Super 228, 781 A.2d 1247 (Pa. Super. 2001). However, this right is more limited than that in criminal cases, as claims of ineffective assistance of counsel must be raised on direct appeal. We then review the record as a whole to determine whether or not the parties received a "fundamentally fair" hearing; a finding that counsel was ineffective is made only if the parent demonstrates that counsel's ineffectiveness was "the cause of the decree of termination." **T.M.F.**, 573 A.2d at 1044; **see also, S.W.**, 781 A.2d at 1249.

**In the Interest of J.T.**, 983 A.2d 771, 774–775 (Pa. Super. 2009).

Mother, on November 20, 2014, for each child, signed a petition for voluntary relinquishment of parental rights, **see** 23 Pa.C.S. § 2501, and, as well, signed a consent to adoption that was attached to the petition. Thereafter, on December 17, 2014, Mother wrote a letter to DHS indicating

- 9 -

she had changed her mind about consenting to the termination of her parental rights. *See* N.T., 2/12/2015, at 7. However, at the hearing held on February 12, 2015, Mother stated on the record that she wished to withdraw the letter and proceed on the petitions to voluntarily relinquish her parental rights to the children. *Id.*

Following a colloquy of Mother by her appointed counsel, the trial court entered decrees of voluntary termination of parental rights of mother as to each child, stating "[E.M.] has relinquished forever all his/her parental rights in and to his/her minor child, [child's name] and parental rights are hereby terminated. The custody of [child's name] is hereby transferred to the Philadelphia Department of Human Services. …." Decrees, 2/12/2014. In addition, by these decrees, petitions to confirm consent to terminate parental rights and to involuntarily terminate parental rights were withdrawn. *See id.*

The trial court, in its opinion written in support of its decision, explained:

> A parent may relinquish their parental rights to an agency under 23 Pa.C.S.A. § 2501:
>
> > (a) *Petition.* --When any child under the age of 18 years has been in the care of an agency for a minimum period of three days or, whether or not the agency has the physical care of the child, the agency has received a written notice of the present intent to transfer to it custody of the child, executed by the parent, the parent or parents of the child may petition the court for permission to relinquish forever all parental rights and duties with respect to their child.

The parent's consent to relinquish parental rights must be intelligent, voluntary and deliberate. ***In re Watson***, 450 Pa. 579, 301 A.2d 861 (1973). In the instant case, the mother, E.M. was colloquied by her attorney regarding her request to revoke her revocation letter. Furthermore, she was colloquied by her attorney regarding her request to proceed on her voluntary relinquishment petitions. The mother testified that she did sign consents to terminate her parental rights on a voluntary basis; she read and understood the documents she signed and understood her signature indicated that she gave up her parental rights. (N.T., 2-12-15, pgs. 5-9). Furthermore, E.M. testified that no one promised her anything or forced her to sign the document. (N.T., 2-12-15, p. 9). Moreover, E.M. testified that she understood the procedure for revoking her consent because she wrote a letter to DHS revoking her consent to voluntarily terminate her parental rights just short of the thirty day revocation deadline. (N.T., 2-12-15, p. 6). The mother, E.M., clearly testified that she changed her mind and wanted to rescind that letter. Lastly, the Court sent mother and her attorney out of the courtroom to confer with her regarding her revocation request. The Court stated to mother's attorney "Take a moment and step out in the hall with mom, I just want it her to be one hundred percent sure". (N.T., 2-12-15, p. 6).

As explained in the initial Decrees, the Trial Court found the [sic] E.M. relinquished forever all her parental rights in and to her minor children and her parental rights are terminated.

Trial Court Opinion, 6/9/2015, at 3.

Our review of the record confirms the trial court's account of the colloquy by Mother's counsel and its assessment of Mother's consent. Mother indicated to the court she wished to withdraw her revocation of consent letter, wanted to proceed with the petition to voluntarily terminate her parental rights, and was "willing to by consent give up [her] parental rights to [her] children." N.T., 2/12/2015, at 9. She further testified no one had forced her to sign the consent and that no promises had been made to

her in exchange for her consent. *See* N.T., 2/12/2015, at 9. Based on this colloquy, Mother cannot show she did not receive a "fundamentally fair" hearing or demonstrate that counsel's ineffectiveness was "the cause of the decree of termination." *Interest of J.T., supra*, 983 A.2d at 775. Accordingly, we conclude this ineffectiveness issue is frivolous.

The second issue identified in the *Anders* brief is that the court failed to consider whether a natural bond exists between the children and parent, and whether termination would destroy an existing, necessary and beneficial relationship.

We note that Mother failed to include this specific challenge in her counseled Rule 1925(b) statement and, therefore, the issue is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). In any event, Section 2511(b) of the Adoption Act requires the court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child," in involuntary termination proceedings. 23 Pa.C.S. § 2511(b). Here, however, Mother's parental rights were **voluntarily** terminated under 23 Pa.C.S. § 2501. Consequently, any issue related to the inadequacy of the evidence under section 2511 bears no relevance to the trial court's order, and is frivolous.

In sum, we conclude the issues presented in this appeal are frivolous, and our independent review of the record reveals no non-frivolous issues. Accordingly, we affirm.

Decrees affirmed. Petition for leave to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2015