J-A30024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.S., MOTHER | No. 1334 MDA 2016 |

Appeal from the Decree of July 3, 2016
In the Court of Common Pleas of Huntingdon County
Orphans' Court at No(s): CP-31-OC-12-2016

BEFORE: BOWES, OLSON AND STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 22, 2016**

Appellant, A.S., appeals from the decree that was entered on June 23, 2016 and made final on July 3, 2016, which involuntarily terminated Appellant's parental rights to her minor child, A.P. (born in October 2013) (hereinafter "Child"). We are constrained to remand the case for further proceedings consistent with this memorandum.

On March 18, 2016, Huntingdon County Children and Youth Services Agency (hereinafter "the Agency"), filed a petition for involuntary termination of Appellant's parental rights (hereinafter "TPR Petition").[1] As the Agency averred, on August 15, 2014, the trial court entered an order

_____

[1] On that same date, the Agency filed a petition to involuntarily terminate the parental rights of Child's natural father, Z.P. (hereinafter "Father"). Father was served with the termination petition and the trial court appointed counsel to represent Father; however, Father did not appear at the termination hearing. The trial court terminated Father's parental rights to Child by decree entered on June 23, 2016 and made final on July 3, 2016. Father has not filed a notice of appeal from the trial court's termination order and Father is not a party to the current appeal.

J-A30024-16

finding that Child was dependent and awarding the Agency legal and physical custody of Child. The Agency averred:

> At the time [Child] was originally placed, [Appellant] had overdosed on heroin and was subsequently arrested for burglary and placed in jail. Since that time, [Appellant] has either remained in jail or in a halfway house in compliance with sentences she received through the criminal justice system. [Appellant] absconded from the halfway house on February 10, 2016. At the time of this petition, a warrant for her arrest has been issued. . . . [H]er present whereabouts are unknown.

TPR Petition, 3/18/16, at ¶¶ 3 and 8 (some internal capitalization omitted).

Within the TPR Petition, the Agency claimed that: Appellant was incapable or unwilling to care for Child; Child "has been in placement in excess of [12] months;" Appellant has "made little, if any progress in remedying the issues and concerns which led to [Child's] placement on August 15, 2014;" and, "[t]he conditions which led to the removal or placement of [Child] continue to exist and termination of [Appellant's] parental rights would best serve the needs and welfare of [Child]." *Id.* at ¶¶ 10-26. The Agency sought termination of Appellant's parental rights under 23 Pa.C.S.A. §§ 2511(a)(2), (5), and (8). *Id.* at ¶¶ 13-26.

The trial court appointed counsel to represent Appellant and then scheduled a termination of parental rights hearing for June 23, 2016. However, although Appellant's counsel appeared for the June 23, 2016 hearing, Appellant did not personally appear at the hearing.

- 2 -

During the hearing, the Agency presented the testimony of Agency caseworker Rose Sanders, who was assigned Child's case. As Ms. Sanders testified:

> The case came into us on intake on June 2, 2014[,] . . . that there were concerns that [Appellant] was hiding from the caseworkers and didn't want to do drug screens. There were concerns that she was using heroin. She was neglecting [Child]. There [were] reports that [Child] was crying all the time and had diaper rash and that there were concerns with home conditions.
>
> . . .
>
> On July 21st of 2014[, Appellant] overdosed . . . on heroin.

N.T., TPR Hearing, 6/23/16, at 4.

Ms. Sanders testified that, after Appellant's overdose, "[Appellant] was arrested for theft[; s]he was caught in the act and [the police] notified [the Agency] that they were arresting her." *Id.* at 5. As a result, on August 15, 2014, the trial court declared Child dependent and placed Child in a foster home. *Id.* at 4-5.

On August 27, 2014, Child was transferred from the foster home to the care of Father. Ms. Sanders testified:

> After [Child] was placed with [Father], there were continued concerns of him testing positive for drugs but he was living with his parents at the time, so there were other caregivers.
>
> . . .
>
> [O]n December 18[,] 2014, [Father] got kicked out of his parents' home and he was homeless. So on December 19, 2014, the Agency filed an EPC and we had to chase [Father] all over town for about eight hours until we found him and [Child] in the middle of the night in the cold.

- 3 -

. . .

> [Father] was caught by the Mount Union Police and the State Police [were] involved. They found him walking down the street carrying [Child] in freezing weather at like 12:30 at night. . . . [Child] was dressed but he was dirty. He was hungry, he was thirsty and he was freezing. His face was red, beet red, from the cold.

*Id.* at 5-6 and 22.

Moreover, Ms. Sanders testified that the authorities had to "chase[] [Father] all over town" even though Father knew that the Agency was looking for him. *Id.* at 6. According to Ms. Sanders: "[Father] was in communication with us on and off on cell phone and refused to meet with us and refused to talk to us and meet with us face-to-face to discuss what we were doing." *Id.*

On December 19, 2014, the Agency placed Child in E.H.'s foster home. Ms. Sanders testified that: Child has remained in E.H.'s home continuously since placement; E.H.'s home is pre-adoptive; Child is doing very well in E.H.'s home and is "part of their family;" Child refers to E.H. as "mom" and "looks at them as his family;" and, "an adoption and a permanent home for [Child would] be in [Child's] best interests." *Id.* at 6, 10, and 29.

Ms. Sanders testified that Appellant was incarcerated at the time Child was placed in E.H.'s home. *Id.* at 7. However, on August 12, 2015, Appellant was released to a Harrisburg halfway house and "the Agency

beg[a]n working with her to have visits [with Child] at the halfway house."
*Id.* at 8.

Ms. Sanders testified that, from August 12, 2015 until October 2015, Appellant had two failed tests for alcohol at the halfway house and, as a result, Appellant was not permitted to leave the halfway house to visit Child. *Id.* at 11. Therefore, Ms. Sanders testified, the Agency twice traveled from Huntingdon to Harrisburg, with Child, so that Appellant could visit with Child. *Id.* However, Ms. Sanders testified:

> [the last visit] didn't go too well. It ended sooner than expected because [Appellant] had a breakdown of sorts when she was requested to change [Child's] diaper and she couldn't bring herself to do it and cried and asked for the foster mom to come back in and do it.

*Id.* at 17.

Ms. Sanders testified that she last heard from Appellant in October 2015. *Id.* Further, Ms. Sanders testified, Appellant absconded from the halfway house on November 10, 2015 and, after a warrant was issued for her arrest, Appellant was arrested and incarcerated at SCI-Muncy. *Id.* at 8-9 and 11. Ms. Sanders testified that Appellant was paroled "approximately a week or two" prior to the TPR hearing. *Id.* at 9. Nevertheless, Ms. Sanders testified that Appellant did not communicate with the Agency or with Child after her arrest. *Id.* at 9.

Ms. Sanders also testified that Appellant: does not have the insight or ability to care for Child; has not been successful in obtaining and

maintaining a stable home for Child; and, has not remedied the situation that led to Child being placed and remaining in placement. *Id.* at 10-11.

At the conclusion of the hearing, the trial court entered the following decree:

DECREE *NISI*

NOW, this 23rd day of June, 2016, the [trial] court makes the following findings of fact, conclusions of law[,] and decree *nisi*:

FINDINGS OF FACT

1. [Appellant] . . . is the natural mother of [Child].

2. [Appellant] was duly served by [the] Deputy Sheriff of Lycoming County, Pennsylvania, with [] service . . . relative to a Petition to Involuntarily Terminate Parental Rights regarding [Child].

3. [Appellant] failed to appear at the termination of parental rights hearing held June 23, 2016.

4. [Appellant] has been represented by counsel since [Child] was declared dependent on August 15, 2014. Similarly, she was represented by counsel in the termination proceeding.

5. At the time of the hearing, [Appellant] failed to attend; however, her counsel was in the courtroom and available to represent her.

6. Testimony elicited at the termination hearing indicates that [Appellant] was recently paroled from SCI-Muncy.

CONCLUSIONS OF LAW

1. The [trial] court was presented with sufficient factual evidence/information to support the involuntary termination of [Appellant's] parental rights.

- 6 -

2. Termination of the parental rights of [Appellant] is in the best interests of [Child].

3. The petitions, hearings[,] and procedures followed by the Agency are in compliance with the Pennsylvania Adoption Act.

DECREE *NISI*

The parental rights of [Appellant] regarding [Child] . . . are hereby terminated *nisi*. Huntingdon County Children's Services is directed to obtain [Appellant's] current address from either SCI-Muncy or the Pennsylvania Board of Probation and Parole. Thereafter, a copy of these findings of fact, conclusions of law[,] and decree *nisi* shall be served on [Appellant] at her address by both certified mail and first class mail.

[APPELLANT] SHALL HAVE TEN [] DAYS FROM THE DATE THIS DECREE *NISI* IS MAILED TO FILE OBJECTIONS OR EXCEPTIONS IN THE OFFICE OF THE CLERK OF THE ORPHANS' COURT FOR HUNTINGDON COUNTY.

IF NO WRITTEN OBJECTIONS OR EXCEPTIONS ARE FILED WITHIN THE TIME ALLOWED, THIS DECREE *NISI* SHALL BECOME FINAL WITHOUT THE NEED FOR ANY FURTHER ACTION BY THE COURT.

Trial Court Decree, 6/23/16, at 1-3 (some internal capitalization omitted).

Appellant did not file exceptions to the decree[2] and, on July 3, 2016, the decree became final by its own terms. *Id.* at 3.

On July 18, 2016, Appellant (through counsel) filed a timely notice of appeal from the termination decree. However, Appellant did not file her

---

[2] Appellant did not need to file exceptions to preserve her claim on appeal. *See* Pa.O.C.R. 7.1 (effective until October 31, 2016) (providing that the filing of exceptions is optional).

statement of errors complained of on appeal with her notice of appeal, as required by Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i). Pa.R.A.P. 1925(a)(2)(i) ("[t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal"). The trial court then issued a Rule 1925(a) opinion, which declared:

> On July 18, 2016, [Appellant] filed an appeal from [the trial court's] June 23, 2016 decree *nisi* which terminated the parental rights of [Appellant].
>
> Counsel has failed to comply with Pa.R.A.P. 1925(a)(2) due to a failure to file a statement of matters complained of on appeal, thus [Appellant] has waived all issues on appeal pursuant to Pa.R.A.P. 1925(b)(4)(vii).
>
> We would also note that [Appellant] failed to attend the termination hearing, and [the Agency] presented clear and convincing evidence that [Appellant's] parental rights should be terminated.

Trial Court Opinion, 8/16/16, at 1 (some internal capitalization omitted).

On September 1, 2016, Appellant filed, in the trial court, a concise statement of errors complained of on appeal. The statement declared:

> [The trial court] erred in terminating Appellant's parental rights to [Child] because the evidence presented by [the Agency] was insufficient as a matter of law to support a termination of her parental rights. The Agency bore the burden to prove by clear and convincing evidence that termination of Appellant's parental rights was justified pursuant to 23 Pa.C.S.A. § 2511(a)(2), (a)(5), or (a)(8), and it failed to do so. Considering the efforts and progress made by [Appellant] towards alleviating the conditions that led to the placement of [] Child and towards reunifying with [] Child, termination of Appellant's parental rights was not in [] Child's best interests.

Appellant's Concise Statement, 9/1/16, at 1.

Appellant now raises the following claim to this Court:

> Did the [trial court] err when it terminated [Appellant's] parental rights to [Child], given that the evidence presented was insufficient as a matter of law to support a termination of [Appellant's] parental rights, and that [Appellant] had made efforts and progress towards alleviating the conditions that led to the placement of [] Child?

Appellant's Brief at 4.

In this case, the trial court concluded that Appellant's claim on appeal was waived because Appellant failed to comply with Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and file her concise statement of errors complained of on appeal contemporaneously with her notice of appeal. Trial Court Opinion, 8/16/16, at 1. In accordance with our binding precedent in *In re J.T.*, 983 A.2d 771 (Pa. Super. 2009), we conclude that Appellant's late filing of her concise statement does not result in the waiver of her claim on appeal.

In *In re J.T.*, the trial court terminated the mother's parental rights to her child. The mother's counsel then filed a notice of appeal to this Court, but counsel failed to include the requisite concise statement with the notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i). The mother's counsel did, however, file a concise statement later, in response to the trial court's order.

On appeal, this Court held that counsel's late filing of the concise statement did not result in the waiver of the mother's issues on appeal. We explained:

Pennsylvania Rule of Appellate Procedure 1925 . . . require[s] that in a Children's Fast Track appeal the [concise statement must] be filed and served with the notice of appeal. Pa.R.A.P. 1925(a)(2). Appellant did not do so. . . . Therefore, we must consider whether the untimely filing precludes appellate review.

In **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998), the Supreme Court of Pennsylvania stated that Rule 1925(b) established a clear rule for waiver as it stated that any issues not raised in a court-ordered Rule 1925(b) statement will be considered waived on appeal. In **Commonwealth v. Butler**, 812 A.2d 631 (Pa. 2002), the Supreme Court held that this waiver is automatic and applies regardless of whether the opposing party raises the waiver issue and regardless of whether the trial court issued an opinion addressing the issues on appeal.

In **Commonwealth v. Burton**, 971 A.2d 428 (Pa. Super. 2009) (*en banc*), this court, based on a recent amendment of Rule 1925,[3] held that in criminal cases late filing of the statement of errors complained of does not mandate a finding of waiver. The **Burton** decision is premised on the concept that late filing is *per se* ineffectiveness of counsel. The client should not be penalized by dismissal of his appeal as a result of deprivation of his constitutional right to effective counsel.

The unique nature of parental termination cases has long been recognized by the Supreme Court of Pennsylvania. Thus, **In re Adoption of R.I.**, 312 A.2d 601 (Pa. 1973),

_____

[3] Pennsylvania Rule of Appellate Procedure 1925(c)(3) declares:

If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been *per se* ineffective, the appellate court shall remand for the filing of a Statement *nunc pro tunc* and for the preparation and filing of an opinion by the judge.

Pa.R.A.P. 1925(c)(3).

the Supreme Court held that an indigent parent in a termination of parental rights case has a constitutional right to counsel. The right to counsel in parental termination cases is the right to effective assistance of counsel even though the case is civil in nature. However, this right is more limited than that in criminal cases, as claims of ineffective assistance of counsel must be raised on direct appeal. We then review the record as a whole to determine whether or not the parties received a "fundamentally fair" hearing; a finding that counsel was ineffective is made only if the parent demonstrates that counsel's ineffectiveness was the cause of the decree of termination. If late filing of the 1925 statement waived [the m]other's appeal rights in this case, there has been *per se* ineffectiveness of counsel just as there was for the appellant in **Burton**. We conclude that, as in **Burton**, in parental termination cases a late filing of a required 1925 statement does not mandate a finding of waiver.

*In re J.T.*, 983 A.2d at 774-775 (some internal citations and quotations omitted) (internal footnotes omitted).

*In re J.T.* applies in full to the case at bar. Therefore, in this termination of parental rights case, we conclude that counsel's late filing of Appellant's concise statement does not require the wavier of Appellant's claims on appeal. *Id.*

On appeal, Appellant claims that the evidence was insufficient to support the termination of her parental rights. We have explained our standard of review:

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of

- 11 -

the precise facts in issue. It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law.

*In re Adoption of G.L.L.*, 124 A.3d 344, 346 (Pa. Super. 2015) (internal quotation marks and citations omitted).

Further, as this Court has held:

In termination cases, an appellate court employs a broad scope of review to ensure that the trial court has satisfactorily fulfilled the requirements of examining all evidentiary resources. . . .

. . .

Scope of review, relates to the appellate court's duty to ensure that the trial court has satisfactorily fulfilled the requirements of examining all evidentiary resources, conducting a full hearing and setting forth its decision in a full discursive opinion. A broad scope of review, therefore, requires that the appellate court conduct a comprehensive review of the record formulated in and the decision formulated by, the lower court. **In other words, in reviewing a termination of parental rights order, our Court must consider all evidence before the lower court as well as the lower court's findings of fact and conclusions of law**.

*In re K.P.*, 872 A.2d 1227, 1231 (Pa. Super. 2005) (internal quotations, citations, and emphasis omitted) (internal emphasis added).

In the case at bar, the trial court did not make any pertinent findings of fact, did not specify which subsection (or subsections) of 23 Pa.C.S.A. § 2511(a) it utilized to terminate Appellant's parental rights, and did not

conduct an analysis under either 23 Pa.C.S.A. § 2511(a) or (b). As we explained in *In re K.P.*, "[w]e are unable to exercise our broad scope of review where the trial court fails to exercise its own independent analysis of the record in a full discursive opinion." *In re K.P.*, 872 A.2d at 1231.

Therefore, we must remand this case to the trial court, so that it may make the requisite factual findings and conduct a proper analysis under 23 Pa.C.S.A. § 2511(a) and (b). Obviously, it is in the best interests of Child that we resolve this matter promptly. Accordingly, we shall retain jurisdiction over this appeal. Within ten days of this memorandum, the trial court shall issue a Rule 1925(a) opinion that recites its factual findings, states which subsection of 23 Pa.C.S.A. § 2511(a) it utilized to terminate Appellant's parental rights, and applies the facts to the law of 23 Pa.C.S.A. § 2511(a) and (b). Within three days of the trial court's Rule 1925(a) opinion, Appellant's counsel shall notify this Court's prothonotary *via* letter whether additional briefing is necessary. If counsel notifies this Court that no such additional briefing is necessary (or fails to notify this Court within the required time period), we will decide the appeal on the basis of the trial court's Rule 1925(a) opinion and the briefs filed by Appellant and the Agency/guardian *ad litem*. If additional briefing is necessary, Appellant shall file a supplemental brief with this Court within 10 days of the trial court's Rule 1925(a) opinion. The Agency and the guardian *ad litem* may file a brief

within ten days of Appellant's supplemental brief.  No reply will be permitted without leave of Court.

Case remanded.  Jurisdiction retained.