J-S21015-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: ADOPTION OF N.A.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.N., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1774 WDA 2017 |

Appeal from the Order October 27, 2017
In the Court of Common Pleas of Washington County Orphans' Court at
No(s):  No. 63-17-0108

BEFORE:  OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                          FILED JUNE 25, 2018

E.N. ("Father") appeals the order entered on October 27, 2017, that granted the petition[1] filed by S.D. ("Mother") seeking to involuntarily terminate Father's parental rights to their female child, N.N. ("Child") (born in June of 2007), in order for Mother's husband, R.D. ("Stepfather") to adopt Child.  We vacate and remand.

The trial court set forth the factual background of this matter, as follows:

[Child] was born June [ ], 2007 to Mother and Father.  Initially, N.N. lived with Mother and Father until Father was arrested and incarcerated in October 2007.  During Father's incarceration, and prior to his sentencing in 2010, Mother would take N.N. to visit Father a couple of times each month.  Father has not seen the [Child] since August 2008, and last spoke with her[] on November 6, 2012.

_____

[1] Pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1) and (b).

In February 2010, Father was found guilty of two (2) counts of criminal homicide and sentenced to two (2) consecutive life sentences, each without the possibility of parole. Throughout his time in prison, Father sent N.N. no more than five (5) letters each year, and it has been years since he last sent N.N. any gifts or presents. While in prison, Father earns approximately forty-seven dollars ($47.00) each month for teaching others how to build houses. Father has never provided any of this money as child support for N.N.

[...] N.N. expressed that her wish is to be adopted by [Stepfather]. Mother has been married to [Stepfather] since September 18, 2015. [Stepfather] has resided with Mother and N.N. since 2009, and he views N.N. as his daughter. [Stepfather] has supported N.N. by providing her with a home, clothing, love and guidance. [Stepfather] has also bonded with N.N. by participating with her in other activities to include sports and going to the movies.

Trial Court Opinion, 10/27/17, at 1-2.

On January 31, 2017, Mother filed the petition to terminate the parental rights of Father to Child, so that Stepfather could adopt Child. On February 22, 2017, the trial court received and docketed a hand-written letter from Father stating that, although incarcerated, he wished to participate in the hearing on the termination petition scheduled for April 3, 2017.

On April 3, 2017, the trial court held a hearing on the termination petition. Father was present at the hearing via videoconference, but proceeded unrepresented by counsel. Mother and Stepfather were present and represented by legal counsel. Mother presented the testimony of Stepfather and her mother, D.H., Child's maternal grandmother. Mother also testified on her own behalf. Father presented the testimony of his mother,

L.N., the Child's paternal grandmother. He also testified on his own behalf. Child was not present.

On May 30, 2017, the trial court appointed counsel, Erick Rigby, Esquire to represent Child. On September 7, 2017, the trial court held a brief hearing, but did not hear any additional testimony or admit any additional documentary evidence. On September 11, 2017, Attorney Rigby filed a position statement on behalf of Child. In the position statement, Attorney Rigby stated that he was representing both the legal interests and best interests of Child and recommended terminating Father's parental rights.[2] On October 27, 2017,

_____

[2] Pursuant to In Re Adoption of L.B.M., 161 A.3d 172 (Pa. 2017), the appointment of legal counsel to represent a child in a contested termination proceeding is mandatory under 23 Pa.C.S.A. § 2313(a). In L.B.M., our Supreme Court looked to the Rules of Juvenile Court Procedure to define the difference between a child's best interests (which are advocated by a guardian ad litem) and a child's legal interests (which are advocated by legal counsel).

> "Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian ad litem is to express what the guardian ad litem believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

L.B.M., 161 A.3d at 174, n.2 quoting Pa.R.J.C.P. 1154 cmt.

In the position statement, Attorney Rigby stated:

> [C]hild indicated to counsel that she wishes to have her parental connection with her biological father severed. She stated that she would like her step-father to adopt her, and that it was her request that these proceedings be initiated.

the trial court entered the order involuntarily terminating Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).

On November 8, 2017, Father wrote a letter to the trial court requesting the appointment of counsel to represent him on appeal, alleging he was indigent. On November 14, 2017, the trial court appointed James R. Jeffries, Esquire to represent Father. On November 27, 2017, Attorney Jeffries timely filed a notice of appeal on behalf of Father. On December 18, 2017, Attorney Jeffries filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) on behalf of Father.[3]

_____

Position Statement, 9/11/17 (unpaginated) at *3.

Attorney Rigby further opined:

> It is [my] opinion [] that the termination of [F]ather's rights is in the best of interest of [] [C]hild. Father has not performed his parental duties and due to his life sentence does not have the capacity to provide for his biological daughter. Step-father has taken a parental role regarding [] [C]hild, and it is in her best interest that she be made free for adoption by [S]tep-father.

Id.

Hence, there was no conflict between Child's legal and best interests. As such, the trial court, in this case, was not required to appoint legal counsel and a separate guardian ad litem for Child. See In re D.L.B., 166 A.3d 322, 329 (Pa. Super. 2017) (declining to remand for appointment of additional counsel for a child represented by a guardian ad litem, a practicing attorney, because the child's best and legal interests were not in conflict).

[3] Although Father failed to accompany his timely notice of appeal with a concise statement, as required by Pa.R.A.P. 1925(a)(2)(i) and (b), the trial

- 4 -

In his brief on appeal, Father raises three issues:

I.  Whether it is reversible error for an incarcerated individual not to be appointed legal counsel in a termination of parental rights hearing?

II. Whether due process is violated when the petition for termination of parental rights does not contain the required Act 101 notice?

III. Whether it is a fatal defect when the petition raises the incorrect statute as a basis of relief?

Father's Brief, at 7.

In his first issue presented, Father contends he lacked proper notice of his right to have counsel appointed to represent him in the termination proceeding in violation of his constitutional guarantee to due process of law. See Father's Brief, at 10-14.

In its opinion, the trial court states that, "Father was asked whether he wanted to be represented by a lawyer and stated that he did not." Trial Court

_____

court did not direct him to file one. On December 20, 2017, this Court ordered Father to file his concise statement by January 2, 2018. However, because Father filed a concise statement with the trial court on December 18, 2017, he was in compliance with this Court's order. As no party complains of prejudice from this late filing, we will review the appeal. See In re K.T.E.L., 983 A.2d 745 (Pa. Super. 2009) (finding that the appellant's failure to simultaneously file a Rule 1925(b) concise statement did not result in waiver of all issues for appeal where the appellant later filed the statement, and there was no allegation of prejudice from the late filing); cf. J.P. v. S.P., 991 A.2d 904 (Pa. Super. 2010) (finding appellant waived appellate issues by failing to comply with the trial court's order to file a Rule 1925(b) statement within 21 days); cf. J.M.R. v. J.M. 1 A.3d 902 (Pa. Super. 2010) (finding appellant waived appellate issues by failing to comply with this Court's order to file a Rule 1925(b) statement).

Opinion, 12/18/17, at 1, n.1. However, for the reasons that follow, we find that Father's constitutional guarantee to due process was not properly protected, because he was not given proper notice that he was entitled to court appointed counsel upon petition and a finding of indigence.

This Court has previously determined:

> The Adoption Act controls termination of parental rights proceedings. See generally 23 Pa.C.S.A. §§ 2511-2513. It provides that a court "shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, upon petition of the parent, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship." Id. § 2313(a.1); see also In re J.T., 983 A.2d 771, 774 (Pa. Super. 2009) (stating, "an indigent parent in a termination of parental rights case has a constitutional right to counsel … [and t]he right to counsel in parental termination cases is the right to effective assistance of counsel even though the case is civil in nature[ ]") (citations omitted). An indigent parent in termination proceedings is likewise entitled to be advised of that right. This Court has held that when a party was denied [the] right to counsel—or failed to properly waive that right—this Court is required to raise this error sua sponte and remand for the [ ] court to correct that mistake.
>
> *          *          *
>
> In In re J.N.F., 887 A.2d 775 (Pa. Super. 2005), this Court held, consistent with the text of Section 2313(a.1), that the parent must request a court-appointed attorney once notified of the requirement to do so. Id. at 780. In that case, this Court concluded that the father, who was incarcerated, was provided with adequate notice[4] that he was required to affirmatively request an attorney.

_____

[4] In In re J.N.F., the notice attached to the termination petition provided as follows:

In re X.J., 105 A.3d 1, 4–5 (Pa. Super. 2014).

Moreover, recently, in In re Adoption of C.A.S., 166 A.3d 353 (Pa. Super. 2017), this Court stated:

> Parents in involuntary termination of parental rights proceedings have a constitutional right to counsel. In re X.J., 105 A.3d 1, 4 (Pa. Super. 2014) (citing In re J.T., 983 A.2d 771, 774 (Pa. Super. 2009)). This Court has held that trial courts need not appoint counsel for indigent parents automatically. In re A.R., 125 A.3d 420, 424 (Pa. Super. 2015). However, courts must advise parents of their right to petition for counsel. X.J., 105 A.3d at 4 (citing In re Adoption of R.I., 455 Pa. 29, 312 A.2d 601, 603 (Pa. 1973)). A parent waives his or her right to counsel if he or she is provided with clear instructions on how to petition for counsel, but fails to take action. See A.R., 125 A.3d at 424 (citing In re Adoption of J.N.F., 887 A.2d 775, 780 (Pa. Super. 2005)).

In re Adoption of C.A.S., 166 A.3d at 356.

In In re Adoption of C.A.S., we found that the father in the termination proceedings had been served with at least five documents providing inconsistent notice of how to seek court-appointed counsel and/or legal assistance. We ultimately concluded:

_____

> You have a right to be represented at the hearing by a lawyer; however, it is not necessary to have a lawyer at this hearing. A court-appointed attorney will be assigned to represent you if you cannot afford legal help. The Family/Orphans' Court Administrator will be present at this hearing. She will give you an application for request of a court-appointed attorney. This attorney will represent you at your [termination hearing]. If you have any questions, contact [the Family/Orphans' Court Administrator].

In re J.N.F., 887 A.2d at 780.

Because it appear[ed] that [the father] may have been misled by these conflicting and inaccurate instructions, we [did not] find that he waived his right to counsel.

Accordingly, we conclude[d] that the orphans' court erred by failing to continue to the termination proceedings so that [the father] could petition for court-appointed counsel. We therefore vacate[d] the order terminating [the father's] parental rights, and we remand[ed] [the] matter to the trial court for a new termination hearing, prior to which the court [was ordered to] determine whether [the father] continue[d] to qualify for court-appointed counsel, and [to] appoint counsel for [the father], if necessary.

In re Adoption of C.A.S., 166 A.3d at 357.

In the current case, the petition for the termination of Father's parental rights did not include any notice to Father regarding his right to counsel. Upon further review of the certified record, there is no indication that notice to Father was filed separately in the record. Moreover, the notes of testimony from the termination hearing reflect the following exchange occurred between the trial court and Father at the commencement of the termination hearing:

THE COURT: [Father], can you hear me?

[FATHER]: Yes, I can, Your Honor.

THE COURT: Great. I received a letter from you saying that although you are incarcerated, you do wish to participate in this hearing; is that correct?

[FATHER]: Yes, sir, it is.

[THE COURT]: All right. I see that a petition for involuntary termination of parental rights was filed [] on behalf of the biological mother. The petition was filed on January 31, 2017. [Father], did you receive a copy of that petition?

[FATHER]: Yes, I did, Your Honor.

- 8 -

THE COURT: I do not see a response to the allegations set forth in the petition. Is it your intention to file a response?

[FATHER]: I didn't know I was supposed to, Your Honor.

THE COURT: I see. You have read the petition?

[FATHER]: Yes, I have, Your Honor.

THE COURT: Do you understand the petition?

[FATHER]: Yes, I do.

THE COURT: All right. [Father], do you have a lawyer?

[FATHER]: No, I do not.

THE COURT: Do you wish to have a lawyer?

[FATHER]: No, I do not.

THE COURT: And why is that, sir?

[FATHER]: Because I feel after – that I say what I need to say, that that's all I can do.

THE COURT: I see. All right. We're going to proceed.

N.T., 4/3/17, at 2-3.

Upon our careful review of the record in the present appeal, we find that the trial court erred when it determined that Father had waived his right to appointed counsel in this matter. There is nothing in the record to suggest that Father received notice of his right to petition for court-appointed counsel. When the trial court conducted the subsequent colloquy of Father, it did not apprise Father of his right to counsel. Without proper notice of his constitutional right to the appointment of counsel in a contested termination

proceeding, Father simply could not waive that right. Based on the foregoing, we vacate the decree terminating Father's parental rights.[5] Accordingly, we are constrained to remand the matter to the trial court for a new termination hearing, prior to which the trial court shall advise Father of his rights to be represented by counsel and to petition for court-appointed counsel, determine whether Father qualifies for court-appointed counsel, and appoint counsel for Father, if necessary. See C.A.S., 166 A.3d at 357.

Order vacated and remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/2018

---

[5] We note that Father does not develop his second or third issues in his appellate brief, but because Father is entitled to relief on his first issue, we need not reach the other issues.